**PEABODY COAL COMPANY & Old Republic Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 84–1167.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1984.

Decided Dec. 2, 1985.

W.C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for petitioners.

Joseph Bednarik, U.S. Dept. of Labor, Washington, D.C., for respondent.

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

**1.** 20 C.F.R. § 727.203(a)(2) provides in pertinent part:

*Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis . . . arising out of that employment, if . . . (2) Ventilatory studies establish the presence of a chronic respiratory or pulmo-

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and GRANT, Senior District Judge.*

ESCHBACH, Circuit Judge.

Peabody Coal Company ("Peabody") petitions this court for review of a grant of benefits to Harry Huber, a coal haulage truck driver, under the Black Lung Benefits Act ("Act") (Title IV of the Federal Coal Mine Health and Safety Act) codified as amended at 30 U.S.C. §§ 901–960. In support of its petition, Peabody advances three arguments: (1) the Secretary of Labor ("Secretary") exceeded his statutory authority in promulgating the presumptive disability regulations found at 20 C.F.R. § 727.203(a) (1985); (2) the administrative law judge's ("ALJ") finding that Peabody failed to rebut Huber's presumptive disability due to employment-related pneumoconiosis is not supported by substantial evidence; and (3) 20 C.F.R. § 727.203(a)(2) (1985),[1] the interim presumption applied by the ALJ to Huber's claim, is unconstitutional. For the reasons stated below, we will deny the petition.

I

The Act provides for the payment of benefits to, *inter alia*, miners found to be totally disabled due to pneumoconiosis arising out of employment in the nation's coal mines. Harry Huber drove coal haulage trucks in surface mining operations for approximately forty years. He retired on November 30, 1977, at the age of sixty-five. Five years prior to his retirement Huber began experiencing difficulties breathing.

nary disease . . . as demonstrated by values which are equal to or less than the values specified in the following table:

| | | Equal to or less than— | |
| --- | --- | --- | --- |
| | | FEV$_1$ | MVV |
| 67" or less | ................ | 2.3 | 92 |
| 68" | ................ | 2.4 | 96 |
| 69" | ................ | 2.4 | 96 |
| 70" | ................ | 2.5 | 100 |
| 71" | ................ | 2.6 | 104 |
| 72" | ................ | 2.6 | 104 |
| 73" or more | ................ | 2.7 | 108 |

He discontinued gardening, and restricted his other activities around his home. Coughing spasms occasionally disrupted his sleep; he wheezed and produced phlegm. These problems have persisted. In the years immediately preceding his retirement Huber declined repair work offered him by Peabody, his employer, during periods of production-related lay-offs. He could not handle the physical strain. He cannot walk up a flight of stairs without pausing. On May 12, 1978, Huber filed a claim for benefits under the Act.

At the Secretary's request, Dr. Glazer conducted ventilatory function studies on Huber on January 31, 1979. These studies disclosed respiratory values sufficiently low to invoke a presumption of total disability due to employment-related pneumoconiosis under 20 C.F.R. § 727.203(a)(2). Dr. Glazer concluded that Huber suffered from a mild restrictive pulmonary dysfunction. Dr. Stewart, also at the Secretary's request, examined Huber on the same day. He concluded that Huber had no cardiopulmonary disease and was "not impaired." Dr. Stewart stated further that Huber's breathing problems did not result from exposure to coal dust. Dr. Stewart ordered x-rays; these he read as negative for pneumoconiosis.

On the basis of these medical reports, the Secretary, on April 5, 1979, made an initial determination awarding Huber benefits under the Act. The Secretary, pursuant to 30 U.S.C. § 932(a), designated Peabody as the coal-mine operator liable for Huber's benefit payments. Peabody contested Huber's eligibility. The Secretary referred Huber's claim to an ALJ for a formal hearing.

On June 19, 1979, at Peabody's request, Dr. Nay examined Huber. Peabody supplied Dr. Nay with the earlier x-rays, appended reports, Dr. Stewart's physical examination report, and a copy of Dr. Glazer's ventilatory studies. Dr. Nay conducted a short, ten to fifteen minute, physical examination of Huber. Dr. Nay subsequently had access to yet another negative x-ray, taken at Peabody's request and read by Dr. Beeler on June 19, 1979. Dr. Nay concluded that Huber did not have pneumoconiosis, that he had no other pulmonary infirmity caused by or aggravated by coal-dust exposure, and that he was not totally disabled.

On April 9, 1980, Dr. Lenyo examined Huber at Huber's request. The examination lasted almost three and one-half hours. Ventilatory studies conducted by Dr. Lenyo corroborated those done earlier by Dr. Glazer. Dr. Lenyo noted Huber's difficulties breathing, his inability to climb stairs, or to walk for any significant distance on level surfaces. Dr. Lenyo ordered an x-ray; his reading established the presence of accentuated pulmonary interstitial fibrosis in some lung fields. Dr. Lenyo concluded that Huber had a restrictive lung disease that could be due to his long coal-mine employment. He further found Huber's chronic lung disease totally disabling.

On November 5, 1980, an ALJ awarded Huber black lung benefits. The Benefits Review Board affirmed the award on December 9, 1983. Peabody petitions this court for review of the Board's order. We have jurisdiction under § 21(c) of the Longshoremen's and Harborworker's Compensation Act, codified as amended at 33 U.S.C. § 921(c), as incorporated by §§ 415(a)(5) and 422(a) of the Black Lung Benefits Act, codified as amended at 30 U.S.C. §§ 925(a)(5) and 932(a).

## II

### A.  Statutory Authority

Peabody argues that the Secretary exceeded his statutory authority in promulgating the § 727.203(a) interim presumptions. If so, the presumptions are invalid, and may not serve as a basis for an award of benefits to Huber under the Act. Section 727.203(a) allows an award of benefits to a surface-mine claimant without a showing that the claimant's employment conditions were substantially similar to those of an underground miner. Peabody's primary contention is that the absence of a "comparability" requirement in § 727.203(a) im-

permissibly extends coverage beyond the Act's intent and purpose. We disagree.

We accord, as we must, considerable deference to an agency's interpretation of its authorizing statute. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984); *Simmons v. Interstate Commerce Commission*, 766 F.2d 1177, 1179 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 791, 88 L.Ed.2d —— (1985). The construction an agency adopts need not be the only permissible one before we will sustain it, *Chemical Manufacturers Association v. Natural Resources Defense Council,* —— U.S. ——, 105 S.Ct. 1102, 1108, 84 L.Ed.2d 90 (1985); it need be only *a* permissible construction, *Chevron,* 467 U.S. ——, 104 S.Ct. at 2782 (1984). In our view, neither the statutory language, the legislative history, nor the goals of the Act preclude § 727.203(a).

Section 931(a) directs the Secretary to award benefits to miners, who file a claim after January 1, 1974, "for total disability due to pneumoconiosis." Section 931(a) is not restricted to underground miners or to surface miners employed under conditions comparable to underground mine operations. Congress also enacted a series of statutory presumptions which aid a claimant in establishing one or more of the elements necessary to entitlement under the Act. 30 U.S.C. § 921(c)(1)–(4). None of the statutory provisions creates a presumption which reaches the ultimate issue of liability. Section 921(c)(1) entitles a claimant to a rebuttable presumption that his pneumoconiosis, established independently of 921(c)(1), arises out of his coal-mine employment, provided that the claimant proves ten or more years of coal-mine employment. Section 921(c)(1) applies to surface as well as underground miners without a comparability requirement. Section 921(c)(4) entitles a claimant to a rebuttable presumption that his totally disabling respiratory disease, established independently of 921(c)(4), is coal-mine related

pneumoconiosis, provided the claimant proves fifteen years of underground, or substantially similar mine employment.

Recognizing the considerable difficulty in clinically diagnosing pneumoconiosis, Congress, in the 1977 amendments to the Act, directed the Secretary to promulgate regulations defining medical and evaluatory criteria for determining whether a claimant filing after December 31, 1973, as is Huber, is totally disabled due to pneumoconiosis. Black Lung Benefits Reform Act of 1977, § 2, P.L. No. 95–239, 92 Stat. 95 (1978) (codified as amended at 30 U.S.C. § 902(f)(1) (1985)). The Secretary's regulations became effective on March 31, 1980. 20 C.F.R. §§ 718.1–.404 (1985). Congress expressly required that any claim filed after December 31, 1973, but before the effective date of the regulations, be processed under criteria "no more restrictive" than those applicable to a claim filed on June 30, 1973. 30 U.S.C. § 902(f)(2)(C). In response to section 902(f)(2), the Secretary adopted the so-called "interim" presumptions set forth at 20 C.F.R. § 727.203(a) (1985).

Section 727.203(a) directly presumes a miner eligible for benefits under the Act, provided the miner has worked for at least ten years in a coal mine, surface or underground, and can prove qualifying medical values. This presumption is subject to rebuttal pursuant to 20 C.F.R. § 727.203(b). A claimant invoking § 727.203(a) need not demonstrate that his pneumoconiosis is employment-related. Section 727.203(a) does not require a claimant to prove the presence of pneumoconiosis or a totally disabling respiratory impairment. Moreover, a claimant under § 727.203(a) need not satisfy a comparability requirement. Section 727.203(a) affords significant evidentiary advantages to the black lung claimant not otherwise available under the statutory presumptions.

The § 727.203(a) presumptions do not contravene the language of the Act. Section 902(f)(1)(D) directs the Secretary to "establish criteria for all appropriate medical tests which accurately reflect total dis-

ability in coal miners." Section 902(f)(2) provides that the criteria applied to a claim filed before the effective date of the 902(f)(1) regulations be "no more restrictive" than those applied to a claim filed on June 30, 1973, *i.e.*, the interim presumptions promulgated by the Secretary of Health and Human Services at 20 C.F.R. § 410.490 (1985). Since the § 727.203(a) presumptions embody medical criteria "no more restrictive" than the 410.490 benchmark criteria, § 727.203(a) is consonant with the language of the Act.

As the Secretary notes, § 727.203(a) "provide[s] additional standards ... not available in [20 C.F.R. § 410.490]." 20 C.F.R. § 727.200 (1985). The Secretary explicitly states, however, that he understands those "additional standards" to accord with the expectations of Congress. 20 C.F.R. § 727.200 (1985). We must determine whether the Secretary's assessment of Congressional intent is reasonably accurate. *Chemical Manufacturers*, — U.S. —, 105 S.Ct. at 1108 (1985); *Chevron*, 467 U.S. —, 104 S.Ct. at 2782 (1984).

Our examination of the legislative history of section 902(f)(1) and (2) of the Act discloses Congress's expectation that the [Secretary] will promulgate standards which give *"the benefit of any doubt"* to the coal miner (emphasis added). S.Rep. No. 209, 95th Cong., 1st Sess. 13 (1977). Moreover, Congress understood 902(f)(2) "not [to] require nor [to] preclude the blanket incorporation of the existing HEW medical eligibility regulations." *Id.* at 14. Those portions of the legislative history addressing the § 727.203(a) interim presumptions are, then, consonant with the form in which the Secretary adopted them. The fact that these presumptions are more liberal than the statutory benchmarks is not inconsistent with the intent of Congress or with the broad remedial purposes of the Act.

In light of the fact that the language of the Act does not preclude the § 727.203(a) regulations, and the legislative history does not disclose a contrary intent on the part of Congress, we hold that the § 727.203(a)

interim presumptions are valid. *Chemical Manufacturers*, — U.S. —, 105 S.Ct. at 1102 (1985).

### B. *Evidentiary Challenge*

Peabody claims that the ALJ's finding that Peabody failed to rebut Huber's presumptive disability due to employment-related pneumoconiosis is not supported by substantial evidence, is contrary to law, and is irrational. We disagree.

Peabody concedes that the § 727.-203(a)(2) presumption was properly invoked on the basis of the January 31, 1979, ventilatory study results. Thus, the burden shifted to Peabody to rebut the presumption of total disability. *Underhill v. Peabody Coal Co.*, 687 F.2d 217 (7th Cir.1982). The pertinent sufficiency requirements for rebutting presumptive disability are set forth at 20 C.F.R. § 727.203(b)(2) and (4) (1985). Under these regulations, if the ALJ, after considering all relevant medical evidence, determines (1) that Huber is able to perform his usual coal-mine work or (2) that Huber does not in fact have pneumoconiosis, then the ALJ must find that Peabody has rebutted Huber's presumptive disability. The ALJ found, however, that Peabody failed to rebut the presumption on either theory.

In reviewing an award of benefits under the Act, our function is to determine whether the ALJ's findings are supported by substantial evidence. *Consolidation Coal Co. v. Chubb*, 741 F.2d 968 (7th Cir. 1984). We have long held that in black-lung cases the process of weighing conflicting medical evidence and drawing inferences therefrom properly lies within the authority of the ALJ. *See, e.g., Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797 (7th Cir.1977). However, the ALJ is not vested with absolute discretion to credit and discredit medical evidence. The ALJ must consider all relevant medical evidence, 20 C.F.R. § 727.203(b), and may not substitute his expertise for that of a qualified physician. *Underhill*, 687 F.2d at 224. If the coal operator introduces direct, uncontradicted testimony to rebut a presump-

tion, the ALJ must establish a valid legal basis for refusing to consider it. *Peabody Coal Co. v. Director, OWCP*, 581 F.2d 121 (7th Cir.1978). In a word, the ALJ may not selectively analyze the record to reach such a desired result. *Underhill*, 687 F.2d at 223. Were it not for these minimal decisional restraints upon the ALJ, "presumed facts," designed to ease a claimant's burden of proof, would become springboards to indiscriminate recovery.

Peabody argues that no credible testimony contradicts the medical evidence it introduced to rebut Huber's presumptive disability pursuant to 20 C.F.R. § 727.-203(b)(2), ("§ (b)(2)"). Peabody claims that it has, then, satisfied § (b)(2) as a matter of law. We disagree.

Section (b)(2) provides that a claimant's presumptive disability is rebutted if: "in light of all relevant evidence it is established that the individual is able to do his usual coal-mine work." Peabody introduced the medical testimony of Drs. Stewart and Nay that Huber was not totally disabled. Huber introduced the testimony of Dr. Lenyo. Dr. Lenyo had conducted an extensive pulmonary examination of Huber and reviewed his employment history. He concluded that Huber had a chronic restrictive lung disease that totally disabled him. The ALJ found, on the basis of this conflicting testimony, that Peabody failed to rebut Huber's presumptive disability. We cannot say that the ALJ erred as a matter of law.

Peabody impugns the soundness of Dr. Lenyo's opinion on the ground that Dr. Lenyo was not aware of the nature of Huber's employment. Peabody itself, however, cured whatever deficiency this initial lack of information may have created in Dr. Lenyo's original report. When cross-examining Dr. Lenyo, Peabody described in some detail the "KW Dart," the last haulage vehicle Huber drove immediately prior to his retirement. After being informed that the truck was equipped with power brakes, power steering, and a power-assisted dumping mechanism, Dr. Lenyo agreed that driving such a vehicle would not be

"particularly strenuous." When Peabody then posed the question as to whether Huber's pulmonary condition would prevent him from driving the KW Dart, Dr. Lenyo clearly and unhesitantly stated that it would.

■ Peabody also claims that Dr. Lenyo's opinion is "incredible as a matter of law." We do not agree. The ALJ decides, in the first instance, whether a medical opinion is sufficiently reasoned. *Director v. Rowe*, 710 F.2d 251, 255 (6th Cir.1983). Dr. Lenyo's opinion does not depart so from the information and test results before him as to offend reason. That being the case, we shall not question the ALJ's decision to give more weight to Dr. Lenyo's opinion than to those of Drs. Stewart and Nay.

■ Peabody argues further that Dr. Lenyo based his judgment as to Huber's disability not solely upon Huber's chronic lung disease, but upon his age and peripheral vascular problems as well. This, Peabody continues, effectively burdens a coal-mine operator with liability for matters not within the scope of the Act. We disagree with Peabody's analysis. The concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act. *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588 (7th Cir.1985). Dr. Lenyo's report states that Huber is totally disabled by reason of his pulmonary condition alone. In the concluding paragraph of his report Dr. Lenyo concludes, "the patient is disabled both by reason of his chronic lung disease and by his peripheral vascular disease." We read this to mean that Dr. Lenyo thought Huber's pulmonary condition to be a sufficient cause of Huber's disability.

Neither does Peabody convince us that Dr. Lenyo considered Huber's age a material factor in determining whether Huber was disabled. Dr. Lenyo does state at one point that "considering also his age, I think [his restrictive lung disease] would [prevent him from performing his employment]." This statement arose in response

to Peabody's general inquiry into the progressive nature of Huber's pulmonary disease. At a later point, Dr. Lenyo concludes, without any reference to his age, that Huber is disabled. Without expressing an opinion as to the relevance of age in determining a claimant's disability, we conclude that Dr. Lenyo reached his opinion without reliance on Huber's age, which was sixty-five when he retired.

In a similar vein, Peabody claims that the ALJ required Peabody to show that Huber's peripheral vascular condition does not disable him. We disagree with Peabody's characterization of the ALJ's decision. The ALJ did mention that Huber's vascular problems also prevent him from performing his usual coal-mine employment. In reaching her conclusion that Peabody failed to rebut Huber's presumptive disability, however, the ALJ singularly relies upon evidence relating to Huber's respiratory problems, and not to his vascular disease.

Peabody claims that the ALJ's decision to discredit Drs. Nay and Stewarts' medical testimony effectively treats Huber's presumptive disability as if it were irrebuttable. We are not convinced that the ALJ did so. The ALJ simply chose to rely upon Dr. Lenyo's opinion instead of Dr. Stewart's concerning Huber's disability. The ALJ fairly considered evidence detracting from Huber's claim. The ALJ found Drs. Stewart and Nays' opinions based upon a deficient understanding of the conditions of Huber's employment, and the effect of those conditions upon his ability to perform his duties. This is in no way tantamount to creating an irrebuttable presumption in Huber's favor.

In sum, we cannot agree with Peabody's contention that the ALJ's finding that Peabody failed to rebut Huber's presumptive disability is irrational, is contrary to law, or is not supported by substantial evidence. The ALJ did not selectively analyze the medical testimony before her in order to award Huber benefits. The ALJ considered all relevant medical testimony in reaching her decision. We shall not disturb her findings or conclusion.

Finally, Peabody claims that the ALJ erred in finding that Huber's "usual coal mine employment" included the driving of haulage trucks other than the power-equipped KW Dart. Peabody urges that we adopt a "last job" test for the purpose of evaluating evidence offered to rebut a claimant's presumptive disability. Peabody contends that the ALJ rejected Dr. Nay's opinion that Huber is not totally disabled solely on the ground that Dr. Nay considered Huber's usual coal-mine employment restricted to driving the easier to handle KW Dart. Hence Peabody concludes that the ALJ's failure to apply a last-job standard constitutes reversible error.

We have yet to decide the meaning of "usual coal-mine employment" for the purposes of § (b)(2), and we decline to do so now. Even were the ALJ to have applied the last-job test to Huber's claims she could clearly have refused to limit consideration to the KW Dart. Huber drove the KW Dart only the last two years of his over forty years of coal-mine employment. Nothing in the record indicates that he would not be called upon to drive other trucks demanding more physical exertion. We will, therefore, affirm the ALJ.

Peabody also introduced evidence pursuant to 20 C.F.R. § 727.203(b)(4) ("§ (b)(4)") to show that Huber does not in fact have pneumoconiosis. Peabody's evidence consisted primarily of Drs. Stewart and Nays' medical opinions and several negative x-rays. The ALJ found this evidence insufficient to rebut Huber's presumptive pneumoconiosis. Peabody claims that the ALJ completely ignored the negative x-rays in reaching her conclusion. We disagree. Though we have held that negative x-rays, when corroborated by other medical evidence, are highly probative and must be given great weight in determining whether a presumption of total disability has been rebutted, we did not, however, direct the ALJ to find in favor of the coal mine operator in such a case. *Peabody Coal Co. v. Lowis,* 708 F.2d 266 (7th Cir.1983). Here the ALJ considered the negative x-rays in

conjunction with the other medical evidence introduced by both parties. That is enough.

## C. *Constitutional Challenge*

 Peabody claims that the section 727.203(a)(2) interim presumption, applied by the ALJ to Huber's claim for benefits under the Act, denies Peabody's right to due process of law in that no rational connection exists between the facts presumed, *viz.*, total disability due to pneumoconiosis arising out of coal-mine employment, and the facts proved, *viz.*, ten years of coal-mine employment and specified pulmonary function studies. We disagree.

The Supreme Court upheld the statutory presumptions under the 1972 Act, Black Lung Benefits Act of 1972, Public Law No. 92–303, 86 Stat. 150 (1972) (codified as amended at 30 U.S.C. § 921(c)(1)–(4) (1985)), against constitutional attack in *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). The Court in *Turner Elkhorn* set forth the standard for judging the validity of presumptions like the one before us now. Unless the inference from the predicate facts of coal-mine employment and pulmonary function values to the presumed facts of total disability due to employment-related pneumoconiosis is "so unreasonable as to be a purely arbitrary mandate," we may not set it aside on constitutional grounds. The fact that § 727.203(a)(2), unlike the statutory presumptions at issue in *Turner Elkhorn*, presumptively determines the ultimate issue of disability is inconsequential. In *Battaglia v. Peabody*, 690 F.2d 106 (7th Cir.1982), we considered and rejected a similar due process attack upon 30 U.S.C. § 921(c)(5), which amended the Act after the *Turner Elkhorn* decision, and which likewise determines the ultimate issue of disability on the basis of presumed facts. Section 921(c)(5) entitles the survivor of a miner who died before March 1, 1978, with at least twenty-five years of coal-mine employment, to the presumption that the miner was totally or partially disabled due to pneumoconiosis at the time of death. Such an inference from a non-medical fact, *viz.*, duration of employment, to presumptive disability, a medical fact, is stronger than the inference triggered in section 727.-203(a)(2), for in that presumption certain medical facts, *viz.*, specific pulmonary function values, are necessary bases for invoking the presumption. In light of the weaker inference warranted by section 727.-203(a)(2) and the legislative history we examined in *Battaglia*, we hold that section 727.203(a)(2) is constitutionally sound.[2]

## III

For the reasons stated above, the petition for review is DENIED.

*Director,* 757 F.2d 1078 (10th Cir.1985).

---

**2.** We note that the Tenth Circuit reached the same conclusion in *Kaiser Steel Corporation v.*