**AMAX COAL COMPANY, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United States Department of Labor, Respondent.**

No. 84–2955.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1986.

Decided Sept. 18, 1986.

---

Mark E. Solomons, Kilcullen, Wilson & Kilcullen, Washington, D.C., for petitioner.

Jeffrey J. Bernstein, Dept. of Labor, Office of the Solicitor, Washington, D.C., for respondent.

Before CUMMINGS, Chief Judge, RIPPLE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

An Administrative Law Judge ("ALJ") awarded William K. Peavler benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45 (the "Act"). The Department of Labor Benefits Review Board ("Board") affirmed the ALJ's decision and order. Amax Coal Co. ("Amax") petitioned for review of the Board's decision and order. The primary issues presented are whether the ALJ's invocation of an interim presumption of total disability due to pneumo-

coniosis, and his finding that Amax did not rebut this presumption, are supported by substantial evidence. For the reasons stated below, we will deny the petition for review of the Board's decision as to liability, but will grant the petition for review of the Board's award of pre-judgment interest.

## I

Amax employed Peavler as a coal miner for 32 years. Peavler's principal mining occupation was that of an electrical repairman. This job required him to lift machine parts weighing between 25 and 200 pounds, and to walk all day. Peavler retired from Amax in 1974, and has not worked since. Due to his breathing problems, he now cannot mow grass, work a garden, climb stairs, or perform any sustained physical activities.

Peavler filed a claim for black lung benefits on January 24, 1974. The Department of Labor approved the claim on July 10, 1979, and notified Amax that it was liable for Peavler's benefits. On July 30, 1979, Amax denied liability on the ground that Peavler was not totally disabled by pneumoconiosis.

The ALJ, David A. Clarke, Jr., heard the claim on August 12, 1980. In a decision and order issued March 13, 1981, he determined that Peavler was entitled to black lung benefits. Amax filed a timely notice of appeal with the Board. In a decision and order dated September 17, 1984, the Board affirmed the ALJ's determination. Amax petitioned this court for review of the Board's decision and order on November 15, 1984.

Four physicians examined Peavler and one physician reviewed his medical records in conjunction with his claim for black lung benefits. Dr. Marion Connerly, a general practitioner who performs examinations for the U.S. Department of Labor, took a chest x-ray of Peavler and performed a ventilatory study in February 1974. The x-ray was negative for pneumoconiosis. Peavler's maximum voluntary ventilation was 93 liters per minute, which was 74% of that predicted for a man of Peavler's height of 5'9".

Dr. William Schmidt, Peavler's personal physician, examined Peavler in May 1975. He diagnosed Peavler as suffering from chronic obstructive lung disease. His diagnosis was based upon a physical examination and Peavler's history of shortness of breath and of coughing. This diagnosis, however, was unsupported by objective evidence. Two chest x-rays displayed only minimal generalized emphysema, and no ventilatory or blood gas tests were conducted. Schmidt concluded that Peavler was permanently 100% disabled.

Dr. Arcot Buresh examined Peavler in June 1975. Based on a chest x-ray that suggested emphysema and pulmonary function tests that suggested a mild degree of obstructive lung disease, he diagnosed mild chronic obstructive lung disease. Buresh reported Peavler's statement that, because of shortness of breath, he could only climb one flight of stairs or walk four blocks on level ground. Buresh, however, did not expressly find that Peavler was totally disabled.

Dr. William Drummy, a board-certified internist, examined Peavler in September 1979. Drummy took a chest x-ray, ventilatory and arterial blood gas studies, and an electrocardiogram ("EKG"). The x-ray showed pulmonary fibrosis and "small rounded densities in the mid lung fields [that] may be due to pneumoconiosis." Although Peavler was short of breath throughout the tests, the ventilatory and arterial blood gas values did not qualify under federal regulations for invocation of the presumption of pneumoconiosis. The EKG showed evidence of organic heart disease. Drummy diagnosed "difficulties with breathing which are probably based on emphysema." According to Peavler's statement, by 1979 he could walk only two blocks on level ground because of shortness of breath. Drummy thus found that Peavler's "[o]verall disability would probably ... prevent him from returning to his previous occupation as a miner."

Dr. Peter Tuteur, an Assistant Professor of Medicine in pulmonary diseases at Washington University in St. Louis, reviewed Peavler's medical record in May 1980, but did not examine Peavler. He diagnosed chronic obstructive lung disease, organic heart disease, arteriosclerotic heart disease, and angina.

## II

The Black Lung Benefits Act provides benefits to coal miners who are totally disabled due to pneumoconiosis. Recognizing the difficulty of clinically diagnosing this disease, Congress authorized the Secretary of Labor to establish medical criteria to determine whether a miner is totally disabled due to pneumoconiosis. 30 U.S.C. §§ 902(f)(1), 932(h); *see Peabody Coal Co. v. Director*, 778 F.2d 358, 361 (7th Cir. 1985). The regulation promulgated by the Secretary provides in pertinent part:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis ... arising out of that employment, if one of the following medical requirements is met:

(1) A ... X-ray ... establishes the existence of pneumoconiosis ...; [or]

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease [; or] ...

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood [; or] ...

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment....

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

20 C.F.R. § 727.203.

The ALJ decides in the first instance whether the medical evidence is sufficient to invoke an interim presumption of total disability due to pneumoconiosis, and whether the entirety of the evidence rebuts the presumption. In reviewing the ALJ's decision, we determine whether the grant or denial of benefits is supported by substantial evidence. *See Peabody Coal Co.*, 778 F.2d at 362; *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Knudtson v. Benefits Review Board*, 782 F.2d 97, 98 (7th Cir.1986).

A. *Invocation of Interim Presumption*

■ In this case, the ALJ found that the documented opinions of four physicians were sufficient to invoke the interim presumption under § 727.203(a)(4). Amax argues that a § 727.203(a) presumption can be invoked only by a preponderance of the evidence within the pertinent category, in this case, by a preponderance of the documented opinions of physicians. It further asserts that no reasoned and documented opinion supports invocation of the § 727.-203(a)(4) presumption. It, therefore, concludes that the § 727.203(a) interim presumption should not have been invoked. We disagree with Amax's major and minor premises, and, hence, with its conclusion.

Amax relies upon *Consolidation Coal Co. v. Sanati*, 713 F.2d 480, 481–82 (4th

Cir.1983), for the proposition that "[i]n each invocation category all like kind evidence must be evaluated and conflicts in that evidence must be resolved before invocation is permitted." Petitioner's Brief 16. In that case, the Fourth Circuit held that the "mere existence of one ... [physician's] opinion ... is insufficient to *require* the invocation of the [§ 727.203(a)(4) ] presumption." *Id.* at 482 (emphasis in original). Nevertheless, the Fourth Circuit has expressly overruled *Sanati* "insofar as it holds that one qualifying physician's opinion does not necessarily invoke the presumption." *See Stapleton v. Westmoreland Coal Co.,* 785 F.2d 424, 427 (4th Cir. 1986) (en banc) (per curiam). In that case, the Fourth Circuit held "that the interim presumption under § (a)(4) is established by one qualifying physician's opinion, i.e., one which meets the regulations' requirements." *Id.* at 426. The Fourth Circuit's holding that a single physician's opinion permits an ALJ to invoke the § 727.203(a) presumption is in accord with our decisions. We have recently stated, for instance, that "a single positive ('qualifying') x-ray film or test may create the presumption of disability, even though other films or tests do not show pneumoconiosis." *Kuehner v. Ziegler Coal Co.,* 788 F.2d 439, 440 (7th Cir.1986); *see also Consolidation Coal Co. v. Chubb,* 741 F.2d 968, 973 (7th Cir.1984) (single positive x-ray sufficient to invoke presumption, notwithstanding three negative x-rays). We, therefore, reject Amax's assertion that the presumption of total disability due to pneumoconiosis can be invoked only by a preponderance of the evidence within each category, and hold that a single credible documented opinion of a physician that finds a totally disabling respiratory or pulmonary ·impairment permits—although it does not necessarily require—an ALJ to invoke the § 727.203(a)(4) presumption.

In invoking the presumption, the ALJ relied upon the documented opinions of Dr. Schmidt, Dr. Buresh, Dr. Drummy, and Dr. Tuteur. Amax, however, argues that there is "no reasoned and documented medical conclusion in this record which establishes a totally disabling respiratory or pulmonary impairment." Appellant's Brief 21. We disagree.

■ The ALJ decides, in the first instance, whether a medical opinion is sufficiently reasoned and documented. *See Peabody Coal Co.,* 778 F.2d at 363. The ALJ credited Dr. Drummy's opinion as reasoned and documented. Dr. Drummy diagnosed chronic obstructive pulmonary disease. He based his diagnosis on the patient's history, a physical examination, a chest x-ray, and ventilation and arterial blood gas studies. According to the patient's history, Peavler suffered from shortness of breath for at least five years. Peavler's shortness of breath was worsening so that by 1979 he could walk only two blocks on level ground. He also had a cough of five to six years duration. The cough, which occurred all day but was worse in the morning, produced about 4 tablespoons of grey mucus per day. The chest x-ray indicated "some evidence of pneumoconiosis in [the] mid lungs." Drummy noted that Peavler was "very short of breath at all times" during the pulmonary function tests and that Peavler's resting blood gas values indicated that "the patient does indeed have lung disease." Drummy therefore found that Peavler was "totally incapacitated from gainful employment by virtue of his cardio-pulmonary difficulties." We thus conclude that substantial evidence supports the ALJ's finding that Dr. Drummy's opinion was reasoned and documented, and established a totally disabling respiratory or pulmonary impairment. Since the documented opinion of a physician exercising reasoned medical judgment that establishes the presence of a totally disabling respiratory or pulmonary impairment is sufficient to invoke the § 727.203(a) interim presumption, we hold that the ALJ's invocation of the interim presumption was supported by substantial evidence.

## B. *Rebuttal of Interim Presumption*

The ALJ found that Amax failed to rebut the interim presumption of total disability

due to pneumoconiosis, and accordingly determined that Peavler was entitled to benefits. Amax, however, argues that the interim presumption was rebutted under § 727.203(b)(3) because Peavler's disability did not arise in whole or in part from his coal mine employment, and under § 727.-203(b)(4) because he does not have pneumoconiosis. For the reasons stated below, we conclude that the ALJ's decision was supported by substantial evidence.

Amax relies upon Dr. Tuteur's review of Peavler's medical record to rebut the interim presumption under § 727.203(b)(3). Based on Peavler's reported coughing and angina, Dr. Tuteur diagnosed chronic obstructive lung disease consisting of chronic bronchitis and emphysema, and organic heart disease. Dr. Tuteur opined that the most important cause of Peavler's chronic bronchitis and emphysema was Peavler's history of smoking, rather than Peavler's coal mine employment. He also stated that Peavler's shortness of breath was not due to chronic obstructive lung disease, but to arteriosclerotic heart disease. Dr. Tuteur's "best guess" was that at times arteriosclerosis was so severe that the left ventricle of Peavler's heart failed to pump enough blood, causing Peavler's shortness of breath. Amax thus argues that Peavler's disabling shortness of breath was caused by organic heart disease and smoking, instead of coal mine employment.

■ Rebuttal of the interim presumption under § 727.203(b)(3) requires that the mine operator establish that the claimant's total disability did not arise *in whole or in part* out of coal mine employment. "The concurrence of two sufficient disabling medical causes, one within the ambit of the Act, and the other not, will in no way prevent a miner from claiming benefits under the Act." *Peabody Coal Co.*, 778 F.2d at 363. As § 727.203(b) requires, *see id.* at 362, the ALJ, in determining whether Amax rebutted the interim presumption, considered all the relevant medical evidence, including Dr. Tuteur's review of Peavler's medical records. The ALJ concluded that Amax did not establish that Peav-

ler's disability did not arise at least in part from coal mine employment.

■ With respect to Amax's argument that Peavler's shortness of breath was due to organic heart disease, Dr. Tuteur's opinion that Peavler's shortness of breath was due to arteriosclerotic heart disease was, to use Dr. Tuteur's words, his "best speculation." Although a physician's opinion need not be expressed in terms of a "reasonable degree of medical certainty," a physician's opinion, to be sufficient to rebut the interim presumption, must be at least "the documented opinion of a physician exercising reasoned medical judgment." *See Underhill v. Peabody Coal Co.*, 687 F.2d 217, 223 (7th Cir.1982). By this standard, Dr. Tuteur's diagnosis of arteriosclerotic heart disease is too tenuous to rebut the interim presumption. First, Dr. Tuteur admitted that, given the data available to him, he could not ascertain whether Peavler had left ventricular failure due to arteriosclerotic heart disease. Hence, his opinion that left ventricular failure causes Peavler's shortness of breath is undocumented. Second, mere speculation does not rise to the standard of reasoned medical judgment. *See Arch Mineral Corp. v. Director*, 798 F.2d 215, 221–22 (7th Cir.1986).

Even if Dr. Tuteur's diagnosis of arteriosclerotic heart disease were sufficient to rebut the interim presumption, Dr. Drummy, the only other physician who diagnosed heart disease, concluded that heart disease and lung disease could not be separated as causes of Peavler's totally disabling shortness of breath. The responsibility for weighing conflicting medical evidence rests in the first instance with the ALJ. *See Peabody Coal Co.*, 778 F.2d at 362. In rejecting Amax's claim of rebuttal under § 727.203(b)(3), the ALJ implicitly gave greater weight to Dr. Drummy's opinion than to Dr. Tuteur's opinion. Especially in view of the fact that Dr. Drummy examined Peavler, whereas Dr. Tuteur merely reviewed his medical record, we shall not question the ALJ's decision to give greater weight to Dr. Drummy's opinion that Peavler's heart and lung diseases were inseparable as causes of Peavler's disability. *Cf.*

id. at 363 (upholding the ALJ's weighing of conflicting opinions).

As for Amax's argument that Peavler's shortness of breath is due to his history of smoking, Dr. Tuteur merely stated that smoking was the most important cause of Peavler's chronic obstructive lung disease. Dr. Tuteur, however, did not state that smoking was the exclusive cause of Peavler's pulmonary impairment. Indeed, he acknowledged that Peavler's ventilatory defect was associated with Peavler's history as a coal miner. Dr. Drummy, the only other physician who considered the relationship between Peavler's smoking and lung disease, also believed that Peavler's chronic obstructive lung disease was associated with Peavler's history of smoking. Nevertheless, Dr. Drummy could not separate smoking and coal mine employment as causes of Peavler's lung disease. Thus, neither Dr. Tuteur's opinion, nor Dr. Drummy's opinion established that Peavler's disability did not arise in part from coal mine employment. *See Arch Mineral Corp.,* at 220.

■ The medical evidence suggests that Peavler's totally disabling shortness of breath was caused in part by smoking and organic heart disease. We conclude, however, that Amax failed to establish that Peavler's disability was not also caused in part by his coal mine employment. Hence, the ALJ's decision that Amax did not rebut the interim presumption under § 727.-203(b)(3) was supported by substantial evidence.

Amax also sought to rebut the interim presumption under § 727.203(b)(4). Although the interim presumption may be invoked under § 727.203(a)(4) merely by evidence that establishes that the claimant has a *respiratory or pulmonary impairment,* it may be rebutted under § 727.-203(b)(4) only by evidence that establishes that the claimant does not have *pneumoconiosis.* The evidence in this case establishes that Peavler has a pulmonary impairment; however, given the difficulty of clinically diagnosing the progressive disease, the evidence is ambiguous as to pneumoconiosis. The ALJ chose to credit the opinion of Dr. Drummy, who recognized evidence of pneumoconiosis, rather than that of Dr. Tuteur. For the reasons we have stated above, we will not disturb the ALJ's decision to accord greater weight to one reasoned medical opinion than to a contrary opinion. Thus, the ALJ's finding that Amax did not rebut the interim presumption under § 727.203(b)(4) is supported by substantial evidence.

C

■ Amax also petitions for review from the Board's award of pre-judgment interest. For the reasons stated in *Peabody Coal Co. v. Blankenship,* 773 F.2d 173 (7th Cir.1985), we agree that pre-judgment interest was improperly assessed. *See also Stapleton,* 785 F.2d at 427, 437–39.

III

For the reasons stated above, Amax's petition for review of the Board's decision as to liability is DENIED; its petition for review of the Board's decision as to pre-judgment interest is GRANTED; and this case is remanded to the Board for further proceedings consistent with law. Costs shall be assessed against petitioner.