955 F.2d 46
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; UNITED
STATES DEPARTMENT OF LABOR; and Holbert Boyles,
Respondents.
 No. 90-1174.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 28, 1992.
Decided Feb. 25, 1992.
 
 Before BAUER, Chief Judge, and POSNER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 In 1980, Holbert Boyles filed a claim for "black lung" benefits pursuant to 30 U.S.C. § 901-945. The Office of Workers' Compensation Programs found Boyles entitled to receive benefits. Peabody Coal Company (Peabody) requested a formal hearing before an Administrative Law Judge (ALJ), who also found Boyles entitled to benefits. The Benefits Review Board (BRB) reviewed the ALJ decision, and determined that because the ALJ omitted relevant medical evidence during its analysis/decision, substantial evidence did not support the decision as a matter of law. The BRB remanded the case to the ALJ, who considered the previously overlooked evidence and again awarded benefits. The BRB affirmed this decision. Peabody appeals, arguing that the ALJ's decision is flawed because of misapplication of a presumption of total disability due to pneumoconiosis and alternatively, that if the presumption applies, it has been successfully rebutted.
 
 I. Facts
 A. Claimant's History
 
 2
 Holbert Boyles was born in September, 1914. He worked as a coal miner for 42 years. The last mine where he was employed was Peabody's Lynnville mine. During those 42 years, Boyles worked as a truck driver for approximately 5 years, as a shovel runner in a coal pit for approximately 26 years, as a coal loader for more than a year, and as a dragline operator for the last ten years of his mine employment. As a shovel runner, Boyles was exposed to heavy coal dust. As a dragline operator, his coal dust exposure was moderate to minimal because he worked above the coal mining area.
 
 
 3
 Boyles also has a history of heavy cigarette smoking, common among coal miners. At the time of the hearing, he had smoked a pack of cigarettes per day for approximately 40 years, and following that he cut down to a half-a-pack for the past few years. The testimony is unclear how many total years Boyle had been smoking and how long since he had reduced his daily quantity.
 
 B. Medical Evidence
 
 4
 Boyles was examined by two physicians, Dr. William H. Getty, a physician frequently hired by the Department of Labor to perform "black lung" physicals, and Dr. Syed Ali, Boyle's treating physician for the two years prior to the hearing. At the time of his deposition, Dr. Ali was not board certified in internal or pulmonary medicine, but was board eligible in internal medicine. Two other physicians, Dr. Miller and Dr. Howard, reviewed the medical evidence and made diagnoses based on this information. Dr. Miller was board certified in internal medicine and awaiting results of his board certification for pulmonary medicine at the time of his deposition. Dr. Howard was board certified in both internal and pulmonary medicine at the time of his deposition. Dr. Getty was the only one of the four physicians who was not deposed.
 
 
 5
 Dr. Getty diagnosed that Boyles suffered from hypertensive cardiovascular disease and chronic bronchitis. He determined that this condition was not related to coal dust exposure. Dr. Ali diagnosed chronic obstructive lung disease caused by a combination of smoking and coal dust. Dr. Miller diagnosed mild degree of airway obstruction related to smoking. Dr. Howard diagnosed a mild obstructive respiratory impairment due to cigarette smoking.
 
 
 6
 Three different x-rays were read by five radiologists. Only one of the five found pneumoconiosis. This reading was made from a 1980 x-ray by a B-reader--a board certified radiologist who specializes in pneumoconiosis readings. Smith v. Director, OWCP, 843 F.2d 1053, 1055 n. 4. (7th Cir.1988). However, a different B-reader found no sign of pneumoconiosis from a more recent 1984 x-ray. The ALJ found the weight of x-ray evidence did not indicate pneumoconiosis. The ALJ also determined that blood gas studies did not indicate pneumoconiosis.
 
 
 7
 The ALJ did, however, find that ventilatory studies indicated existence of chronic respiratory or pulmonary disease, representative of pneumoconiosis. Two different ventilatory studies were performed, one in 1980 and a second in 1984. Although the 1980 study was negative, the 1984 study registered positive for pneumoconiosis on both pre and post bronchodilator tests. Notably, pneumoconiosis is not a progressive disease, yet test results first indicated the disease four years after Boyles' coal dust exposure ceased.
 
 II. Analysis
 
 8
 Although this appeal is from a decision of the Board, the primary decision reviewed is that of the ALJ. Collins v. Old Ben Coal Co., 861 F.2d 481, 486 (7th Cir.1988); Peabody Coal Co. v. Helms, 859 F.2d 486, 489 (7th Cir.1988). We consider whether the ALJ's decision is rational, consistent with the law, and supported by substantial evidence. Shelton v. Old Ben Coal Co., 933 F.2d 504, 507 (7th Cir.1991). Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support a conclusion. AMAX Coal Co. v. Director, OWCP, 801 F.2d 958, 961 (7th Cir.1986). The Court also reviews the BRB decision to examine whether the Board remained within its scope of review and whether it committed an error of law. Id.
 
 
 9
 A. Presumption of total disability.
 
 
 10
 An interim rebuttable presumption of total disability due to pneumoconiosis arising out of employment may be available to a coal miner employed in that capacity for ten or more years. 20 C.F.R. § 727.203(a) (1991). Boyles' length of mine employment fulfilled the first requirement to invoke the presumption. One other requirement must be fulfilled before the presumption may be applied. Id. That is, a living claimant will be found totally disabled due to pneumoconiosis if he shows one of four specific medical findings indicating pneumoconiosis, pulmonary or respiratory disease, or total pulmonary or respiratory impairment. Zeigler Coal Co. v. Sieberg, 839 F.2d 1280, 1282 (7th Cir.1988). These four findings may be based on either: chest x-rays or biopsies, § 727.203(a)(1); ventilatory studies, § 727.203(a)(2); blood gas studies, § 727.203(a)(3); or other medical evidence, § 727.203(a)(4).[1] The ALJ found that Boyle fulfilled the second requirement because the ventilatory studies indicated respiratory and pulmonary disease.
 
 
 11
 Peabody argues that the ventilatory study which registered qualifying ratios triggering the presumption was inaccurate because Boyles was taking Visken, a blood pressure medication which may depress respiratory performance. Two doctors, Dr. Ali and Dr. Miller, theorized about the effects Visken may have on ventilatory studies. The ALJ's initial failure to discuss these effects resulted in error and remand for a decision on this issue. On remand, the ALJ examined Dr. Ali's deposition testimony. Dr. Ali was asked if "beta-blocker" medication, such as Visken, "hurt" breathing. He responded "Depends how the patient reacts to it. Before they affect the pulmonary function you probably would know from the patients how they react to it, but they can." From these statements, the ALJ concluded that Dr. Ali was perfectly aware of Boyles' reaction--if any--to Visken, and that Dr. Ali made his diagnosis in this light.
 
 
 12
 Peabody challenges the second ALJ decision on two grounds. First, Peabody argues that because Dr. Miller discussed the possible effects of Visken, but the ALJ did not readdress Dr. Miller's testimony, the ALJ has again erred. We find this argument unavailing. Dr. Miller's viewpoint was not overlooked on remand because the ALJ quoted from his first opinion which referred to Dr. Miller's Visken concerns. Next, Peabody cites error because the Visken's effects were discussed generally in terms of pulmonary and respiratory function--but not addressed specifically to Boyles and the 1984 ventilatory study that gave rise to the presumption. This argument is stronger.
 
 
 13
 Although Dr. Ali was deposed, neither party pressed him for an explanation of his vague statement that some patients may have a depressed respiratory reaction while taking Visken. Nor did the ALJ "fully inquire into all matters at issue." 20 C.F.R. § 725.455(b) (1991); see Freeman United Coal Mining Co. v. Benefits Review Bd., 912 F.2d 164, 169 (7th Cir.1990). Dr. Ali was never asked to be more specific and state whether Boyles suffered adverse reactions to Visken at the time of the respiratory study. This question remains open and we are therefore unable to determine if the presumption was properly invoked based on the ventilatory studies. In Poole v. Freeman United Coal Mining Co., 897 F.2d 888 (7th Cir.1990), we faced a similar open question. There, the ALJ rejected an argument that a pulmonary function test was affected by a respiratory infection suffered by the claimant. We determined that because no affirmative evidence supported the proposition that the test was affected, the ALJ's decision was supported by substantial evidence. Id. at 895. In the present case, we have testimony by doctors for both the claimant and the coal company that the qualifying ratios may have been adversely affected, and no evidence that it was not. Although the ALJ reasoned that Dr. Ali's statement inferred that Boyles was not adversely affected, we are aware that vague statements made by treating physicians may be given to accommodate their patients. Peabody Coal Co. v. Helms, 901 F.2d 571, 574 (7th Cir.1990). Therefore, substantial evidence does not support the ALJ's decision, and we remand this action to the ALJ for a further fact-finding on this issue.[2]
 
 III. Conclusion
 
 14
 For the foregoing reason, the decision of the BRB is VACATED, and this case is REMANDED to the ALJ for action consistent with this order.
 
 
 
 [1]
 In cases of a deceased claimant, if no medical evidence is available, the claimant's survivors or people with knowledge of the claimant's condition may submit affidavits as to the claimant's prior symptoms. § 727.203(b)(5)
 
 
 [2]
 Peabody argued two other issues. First, that the ALJ impermissibly gave greater weight to Dr. Ali's diagnosis based simply upon his physical examination of Boyles. Next, that even if the presumption was properly invoked, it was successfully rebutted. Because we have required that the case be remanded to the ALJ, we decline to address these arguments