**Vernon DOTSON, Petitioner,**

v.

**PEABODY COAL COMPANY, et al., Respondents.**

No. 87–2904.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1988.

Decided May 20, 1988.

Harold B. Culley, Jr., West Frankfort, Ill., for petitioner.

Mark E. Solomons, Arter & Hadden, Washington, D.C., for respondents.

Before BAUER, Chief Judge, MANION, Circuit Judge, and WILL, Senior District Judge.*

BAUER, Chief Judge.

Vernon Dotson filed a claim for black lung benefits in February 1977. An administrative law judge (ALJ) ruled that Mr. Dotson was entitled to benefits, but the Benefits Review Board (the Board) reversed that decision, concluding that Peabody Coal had rebutted the presumption of pneumoconiosis. We reverse the decision of the Board and remand Mr. Dotson's claim to the ALJ for rehearing.

## I

### Facts

Mr. Dotson worked in coal mine employment from 1933 to 1954 and from 1969 to 1977. He worked above ground in a preparation plant watching and repairing machinery, pushing buttons, and occasionally lifting heavy objects. After retiring in 1977, Mr. Dotson immediately filed for black lung benefits.

As is common in black lung cases that come before this court, Mr. Dotson's record contains medical evidence both suggesting and negating pneumoconiosis. The evidence recommending pneumoconiosis includes a single reading of a chest x-ray taken in 1977, and a pulmonary function test (PFT) from November 1980 that produced sufficiently low values to invoke the interim presumption of pneumoconiosis un-

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

der 20 C.F.R. § 727.203(a)(2).[1] Dr. Roger Mitchell, whose qualifications are not in the record, reviewed the PFT, remeasured certain values, and concluded that the PFT was "acceptable." Dr. Mitchell reviewed the tracings that accompanied the PFT and commented that "2 of three tracings look OK." Dr. Mitchell offered no other interpretation of the PFT, nor did he assess Mr. Dotson's physical condition.

Evidence offered by Peabody contradicting Mr. Dotson's proof includes three negative readings of the 1977 chest x-ray and two uncontradicted negative readings of a 1979 chest x-ray. Dr. Joseph J. Renn, Dr. James V. Vest, and Dr. E.J. Morgan reviewed the November 1980 PFT and all three concluded that it was invalid for several reasons, most notably Mr. Dotson's suboptimal effort and cooperation during the test. Two other physicians, Dr. Owen Taylor and Dr. Martin W. Davis, personally examined Mr. Dotson. In April 1977, Dr. Taylor diagnosed that Mr. Dotson suffered from "myocardial ischemia," but he found no evidence of pneumoconiosis. Dr. Davis conducted a thorough examination of Mr. Dotson in February 1979 and concluded that there was no evidence of pneumoconiosis nor of a permanent disability. He also found that Mr. Dotson was capable of performing his previous coal mine employment. Finally, Dr. Peter Tuteur reviewed Mr. Dotson's entire medical file in October 1982. Included in Dr. Tuteur's review was a deposition of Mr. Dotson taken in August 1982. Dr. Tuteur concluded that there was no evidence in the record to support a diagnosis of pneumoconiosis.

A formal hearing on Mr. Dotson's case was held before ALJ Frederick Neusner on March 15, 1983. On June 17, 1983, the ALJ concluded that Mr. Dotson was entitled to benefits because Mr. Dotson had invoked the presumption of pneumoconiosis by virtue of the November 1980 PFT, and because Peabody had not rebutted that presumption. The ALJ found Dr. Mitchell's [2] appraisal of the PFT more credible than the evaluations by Drs. Vest, Morgan and Renn. Among the reasons offered by the ALJ for disregarding the opinions of Drs. Vest, Morgan and Renn were: (1) Dr. Mitchell's qualifications to analyze the PFT were as good as Drs. Vest's Morgan's and Renn's; (2) the conclusions of Dr. Morgan and Dr. Vest had focused on the FVC reading of the PFT, and not on the more pertinent FEV reading; and (3) Dr. Renn had only concluded that several things were wrong with the PFT, but he had not alleged that the quality standards found in the regulations were not met. Accordingly, the ALJ determined that the results of the PFT should be accepted and Mr. Dotson was entitled to the presumption of pneumoconiosis.

With respect to Peabody's attempt to rebut the interim presumption, the ALJ determined that the physical examinations conducted by Dr. Davis in 1979 and Dr. Taylor in 1977 were persuasive, and that the presumption of pneumoconiosis was rebutted for the time period until November 1980. However, the ALJ determined that Peabody had not offered any evidence to rebut the presumption triggered by the qualifying PFT score. The ALJ concluded that Peabody had offered no evidence to suggest that Mr. Dotson did not have pneumoconiosis after November 1980 or that Mr. Dotson could do his usual coal mine work or comparable or gainful work after that date.

---

1. This regulation allows a claimant to invoke a presumption of pneumoconiosis if he was engaged in coal mine employment for at least ten years and if:

Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ... as demonstrated by values which are equal to or less than the values specified in the following table:

| | Equal to or less than— | |
| --- | --- | --- |
| | FEV | MVV |
| 67″ or less | 2.3 | 2 |
| 68″ | 2.4 | 96 |
| 69″ | 2.4 | 96 |
| 70″ | 2.5 | 100 |
| 71″ | 2.6 | 104 |
| 72″ | 2.6 | 104 |
| 73″ or more | 2.7 | 108 |

20 C.F.R. § 727.203(a)(2). Mr. Dotson's purported FEV value was 2.0 and his MVV was 80.

2. The ALJ occasionally referred to Dr. Mitchell as "Dr. Sherman."

The Board reversed the judgment of the ALJ on the ground that Peabody had established rebuttal as a matter of law under 20 C.F.R. § 727.203(b)(2).[3] The Board noted that the ALJ had accepted as valid the medical opinions of Drs. Davis and Taylor that Mr. Dotson did not have pneumoconiosis and that he could perform his usual coal mine work. The Board then said that the ALJ's reason for rejecting that evidence for the post–1980 period was invalid. That is, the Board reasoned that the November 1980 qualifying PFT did not contradict the opinions of Drs. Davis and Taylor because the PFT was not probative of whether Mr. Dotson had pneumoconiosis or could perform coal mine work.

## II

## Discussion

Although this appeal comes to us from a decision of the Board, our task is to review the judgment of the ALJ. *Smith v. Director, OWCP*, 843 F.2d 1053, 1056 (7th Cir.1988); *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691–92 n. 3 (7th Cir.1987); *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). Our review of the ALJ's decision is limited to whether the decision was rational, supported by substantial evidence, and consistent with applicable law. *Luker*, 826 F.2d at 691. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The ALJ must consider all relevant medical evidence, he cannot substitute his expertise for that of a qualified physician, and he cannot simply disregard the medical conclusions of a qualified physician. *Wetherill v. Director, OWCP*, 812 F.2d 376, 382 (7th Cir.1987). Of course, when medical evidence is in dispute, the weighing of that evidence and the evaluation of a physician's credibility is

within the province of the ALJ. *Smith*, at 1057.

### A. *Interim Presumption*

Although it was not the basis for the Board's decision to reverse the ALJ's award of benefits, Peabody's principal argument on appeal is that the ALJ irrationally allowed Mr. Dotson to invoke the interim presumption. In *Zeigler Coal Co. v. Sieberg*, 839 F.2d 1280, 1282–83 (7th Cir. 1988), we recently rejected the rule that qualifying results of a PFT require the invocation of a presumption if the quality standards found at 20 C.F.R. § 410.430 are met.[4] We said that a "demonstrably invalid" PFT ought not be the basis for invoking a presumption. *Sieberg*, 839 F.2d at 1283. Similarly, in *Mullins Coal Co. v. Director, OWCP*, — U.S. —, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), the Court ruled that a presumption of pneumoconiosis should be invoked only when the claimant has "established" one of the qualifying facts for the presumption by a preponderance of the evidence. *Id.* 108 S.Ct. at 434. Under *Mullins*, a single item of qualifying evidence is only adequate to invoke a presumption if the ALJ, weighing all relevant medical evidence, concludes that the evidence is sufficiently credible to meet the preponderance standard. The Court expressly said that "[t]he ALJ's task is, of course, to weigh the quality, and not just the quantity, of the evidence, before determining whether the presumption has been invoked." *Id.* at 434 n. 23.

■ Under *Mullins* and *Sieberg*, we must review the ALJ's reasons for concluding that the PFT was valid to determine whether his decision was rational and supported by substantial evidence. In our view, the decision of the ALJ to credit the testimony of Dr. Mitchell over Drs. Renn, Vest and Morgan was irrational for at least three reasons. First, the ALJ determined

---

3. This regulation allows for rebuttal of a presumption when the employer establishes that "the individual is able to do his usual coal mine work or comparable and gainful work...." 20 C.F.R. § 727.203(b)(2).

4. These standards provide general guidelines for the taking of PFTs. Among the requirements for a proper PFT are three tracings of the PFT, and a statement from the examiner regarding the individual's ability to understand directions and the degree to which the patient cooperated in taking the PFT.

that Dr. Mitchell was as qualified as Drs. Renn, Vest and Morgan, even though Dr. Mitchell's qualifications were not in the record. Although an ALJ is not bound by formal rules of evidence, *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 972–73 (7th Cir.1984), it is unfair and irrational for the trier of fact to rely on evidence outside the record. *See* 5 U.S.C. § 556(e). Such evidence cannot be challenged by opposing counsel, nor can it be reviewed by the Board or this court. *See generally Wright v. Southwest Bank*, 554 F.2d 661, 663 (5th Cir.1977) (inherently unfair for court to rely on out-of-the-record evidence because litigant was not allowed opportunity to test its validity). Second, the ALJ discounted the testimony of Dr. Renn on the ground that Dr. Renn did not expressly allege that the quality standards in 20 C.F.R. § 410.430 were not satisfied.[5] However, as we held in *Sieberg*, the mere fact that the quality standards of § 410.430 were satisfied does not automatically warrant invoking a presumption; the interpretation of tracings, and not their existence, is the question that counts. *Sieberg*, 839 F.2d at 1283. Dr. Renn determined that some of the PFT tracings revealed less than maximal effort, that none of Mr. Dotson's breath expirations had lasted for the required five seconds, that there was hesitation at the start of the expiration, and that the MVV result did not correlate with the observed one-second FEV value.[6] Dr. Renn then squarely concluded that the PFT was invalid. Thus, Dr. Renn's analysis was straightforward and relevant; it should not have been so easily dismissed. And third, the ALJ minimized the criticism of Dr. Morgan and Dr. Vest by pointing out that those doctors had focused their analysis on the FVC readings and not on the FEV value.[7] However, the FEV is obtained from the FVC curve, and as a result, Dr. Morgan's and Dr. Vest's inter-

pretation of the FVC results was relevant to the validity of the FEV score.

Because of the errors in the ALJ's report, his decision to invoke the presumption was neither rational nor supported by substantial evidence. The ALJ accepted a cursory analysis by Dr. Mitchell—"2 of three tracings look OK"—while disregarding the more thorough analyses of other physicians. Although it is manifestly the role of the ALJ to accept or reject medical testimony, the ALJ must do so for justifiable reasons, which did not happen here. We cannot say, however, based on the record before us, that Dotson's PFT was absolutely invalid. Thus, unless the Board correctly determined that Peabody was entitled to rebuttal as a matter of law, we must remand Mr. Dotson's claim to the ALJ for rehearing.

### B. *Rebuttal Analysis*

The ALJ determined that Peabody had not rebutted the presumption of pneumoconiosis because Peabody's medical evidence was based on medical examinations that preceded the November 1980 PFT. Although the ALJ concluded that the previously obtained medical evidence was "documented and well-reasoned," the ALJ dismissed that evidence simply because it antedated the PFT. The Board reversed the ALJ, adopting an equally rigid bright-line rule. Although the Board's opinion was truncated, the Board essentially held that an uncontradicted, valid medical diagnosis rebuts a qualifying PFT as a matter of law.

 In our view, the position of the ALJ and the Board both conflict with Department of Labor regulations. The ALJ's result was unprincipled because he ignored the regulatory mandate to examine "all relevant medical evidence." 20 C.F.R. § 727.203(b); *see also Mullins*, 108 S.Ct. at

---

5. *See supra* note 4.

6. The MVV (Maximum Voluntary Ventilation) measures the maximum volume of air that can be moved by the patient's respiratory apparatus in one minute. The FEV (Forced Expiratory Volume) measures the amount of air exhaled in one second on maximum effort. *See Underhill*

*v. Peabody Coal Co.*, 687 F.2d 217, 221 n. 5 (7th Cir.1982).

7. The FVC (Forced Vital Capacity) requires the patient to take a deep breath and then blow air out as rapidly and forcibly as possible. The FEV is taken from the first second of the FVC.

435–36. Nothing in the regulations suggests that rebuttal evidence that precedes a qualifying PFT must be disregarded. Indeed, the Department of Labor has expressly said that previously obtained evidence may be used to rebut an interim presumption. "[T]he Department cannot, as has been requested by some, look for the single item of evidence which would qualify a claimant on the basis of the interim presumption, and ignore other *previously obtained* evidence." 43 Fed.Reg. 36826 (1978) (emphasis supplied) (quoted in *Mullins*, 108 S.Ct. at 438 n. 29.) Therefore, we see no reason why uncontradicted medical opinions that precede a PFT should never be relevant.

 The position of the Board was equally flawed because it went to the opposite extreme. The Board concluded, as a matter of law, that Peabody had established rebuttal through the medical opinions of Dr. Taylor and Dr. Davis. Although a qualifying PFT says very little, if anything, about whether a coal mine employee can perform his usual work—nor does it constitute proof of pneumoconiosis, *Mullins*, 108 S.Ct. at 431—we decline to conclude rigidly that medical opinions that precede a qualifying PFT by 21 months and 43 months, as here, establish rebuttal as a matter of law. Pneumoconiosis is a progressive disease, *id.* at 429, and an ALJ may permissibly accord greatest weight to the most recent medical evidence. *Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 973 (7th Cir.1984). Consequently, medical testimony that precedes a PFT by many years ought not always constitute rebuttal; the claimant's condition might have regressed substantially since the examinations.

In this case, the amount of time between the medical examinations and the PFT was not so substantial as to preclude rebuttal nor so insignificant as to compel it. The ALJ, and the Board, should have considered explicitly all relevant evidence, including Mr. Dotson's deposition, the medical opinions of Dr. Taylor, Dr. Davis, and Dr. Peter Tuteur, and the amount of time between the medical examinations and the PFT, in determining whether Peabody had proved rebuttal. Although this case has already been around for too long, we have no alternative but to remand it to the ALJ; the decisions of the ALJ and of the Board were inappropriate. On remand, the ALJ should consider all relevant medical evidence, including any new evidence offered by either party, in determining Mr. Dotson's entitlement to an interim presumption and Peabody's right to rebuttal.

Reversed and Remanded