**PEABODY COAL COMPANY and Old Republic Insurance Company, Petitioners,**

v.

**Lessie L. HELMS and Director, Office of Workers' Compensation Programs, Respondents.**

No. 88–1004.

United States Court of Appeals, Seventh Circuit.

Argued May 24, 1988.

Decided Oct. 4, 1988.

W.C. Blanton, Ice Miller Donadio & Ryan, Indianapolis, Ind., for petitioners.

Jack N. VanStone, VanStone & Krochta, Evansville, Ind., for respondents.

Before POSNER and COFFEY, Circuit Judges, and WILL, Senior District Judge.*

COFFEY, Circuit Judge.

Petitioners Peabody Coal Company and its insurer, Old Republic Insurance Company (collectively "Peabody"), petition for review of a decision of the Benefits Review Board of the Department of Labor. The Board affirmed the decision of an administrative law judge (ALJ) awarding respondent Lessie L. Helms benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. (the Act). We reverse and remand.

I

Lessie L. Helms (Helms) worked as a coal miner for a total of 24 years and was approximately 56 years old when he first applied for benefits under the Act. He began working for Peabody on September 22, 1971, and continued employment with that company until his official retirement in November 1979 although he had not actively worked since November of 1978 when he stopped because of breathing difficulty.[1] Helms' medical history is a litany of hospitalizations, tests, and examinations that disclose a host of physical problems. He had a heart attack in 1979 and a cardiac catheterization and open heart surgery in May of the same year. Eight years before his open heart surgery and while he was still working, Helms had an aortic valve implant. Since that time he has suffered from an irregular duodenal bulb, arteriosclerotic heart disease, cardiomegaly, ar-

thritis, hypertension and moderate obstructive lung disease. He also had a total hip replacement.

Helms smoked at least one pack of cigarettes a day from the time he was a teenager and continued to smoke, at a reduced rate, after his open heart surgery in 1979. He testified that he quit smoking sometime after his 1979 heart surgery but could not remember exactly when he stopped.

Helms filed his initial application for black lung benefits with the United States Department of Labor on February 15, 1979 (several months before his open heart surgery). This application was denied by an examiner. On December 18, 1979, this time with assistance of counsel, Helms filed a second application for benefits. The examiner determined that Helms was entitled to benefits on the basis of the second application and the benefits award was affirmed by a deputy commissioner of the Division of Coal Miners Workers' Compensation, United States Department of Labor. Thereafter, Peabody requested a de novo hearing before an ALJ, and, after the hearing and submission of post-hearing evidence, the ALJ awarded Helms black lung benefits.

The ALJ based his decision on the invocation of an "interim presumption" of total disability due to pneumoconiosis (black lung disease) arising out of coal mine employment and found Peabody failed to rebut the presumption under any one of four rebuttal methods delineated in 20 C.F.R. § 727.203(b).[2] Peabody appealed the ALJ's

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. The parties disagree whether Helms stopped work solely because of shortness of breath or a heart attack. The ALJ did not decide this factual issue but recited the testimony of Helms and his spouse that the reason for stopping work was because of breathing difficulty.

2. For a detailed explanation of the operation of the Act and the regulations, see Mullins Coal Co. v. Director, OWCP, —— U.S. ——, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987); Peabody Coal Co. v. Lowis, 708 F.2d 266 (7th Cir.1983). The regulations establish an interim presumption to initially determine whether a coal miner is "totally disabled due to pneumoconiosis." 20 C.F.R.

§ 727.203(a). A miner triggers the presumption if he was "engaged in coal mine employment for at least ten years" and he satisfies one of five specified medical requirements in § 727.203(a).

Once triggered, the presumption is rebutted only if, after the consideration of "all relevant medical evidence":

"(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this Title); or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see § 410.412(a)(1) of this Title); or

(3) The evidence establishes that the total disability or death of the miner did not arise in

decision and the Benefits Review Board (the Board) affirmed the holding that the decision of the ALJ was supported by substantial evidence. Peabody now petitions this court for review of the Board's decision.[3]

■ Although this appeal is from a decision of the Board, we review the judgment of the ALJ. *Dotson v. Peabody Coal Co.*, 846 F.2d 1134, 1137 (7th Cir.1988); *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589 (7th Cir.1985). Our review is limited to whether the decision of the ALJ is supported by substantial evidence, is in accord with the law, and is rational. *Old Ben Coal Co. v. Luker*, 826 F.2d 688, 691 (7th Cir.1987). Substantial evidence is "such relevant evidence as a rational mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoted in *Smith v. Director, OWPC*, 843 F.2d 1053, 1057).

The only issue on appeal is whether the ALJ erred in ruling that Peabody failed to rebut the initial presumption of disability due to pneumoconiosis[4] under 20 C.F.R. § 727.203(b)(3).[5]

## II

■ Peabody argues that the ALJ erred by improperly disregarding medical evidence establishing that Helms' disability was caused by his heart disease and cigarette smoking and not "in whole or in part out of [his] coal mine employment." *See* 20 C.F.R. 727.203(b)(3). Drawing inferences from the evidence is part of the ALJ's role as factfinder, *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988), but the ALJ must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and cannot simply disregard the medical conclusions of a qualified physician. *Dotson, supra*, at 1137, citing *Wetherill v. Director, OWCP*, 812 F.2d 376, 382 (7th Cir.1987). We agree with Peabody that the ALJ did not consider all the relevant medical evidence in this case and reverse and remand the ALJ's decision with instructions to consider all the medical evidence.

The ALJ stated Helms "has a total disability *associated with his heart disease,* a fact that is uncontradicted in the medical evidence"[6] and to rebut the interim presumption under paragraph (b)(3) requires

whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis." 20 C.F.R. § 727.203(b)(1)–(4); *See Smith v. Director, OWCP*, 843 F.2d 1053, 1054 (7th Cir. 1988).

3. We have jurisdiction to review the final Decision and Order of the Benefits Review Board pursuant to § 21(c) of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 921(c), as incorporated by § 422(a) of the Black Lung Benefits Act (BLBA), 30 U.S.C. § 925(a)(5), 932(a). *Accord, Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 360 (7th Cir.1985). The injury in this case arose in the State of Indiana. *See* LHWCA, 33 U.S.C. § 921(c).

4. The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments arising out of coal mine employment." 30 U.S.C. § 902(b). The regulations include an expanded definition of pneumoconiosis. 20 C.F.R. § 727.202. As we stated in *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 268 n. 4 (7th Cir.1983), this expanded definition includes respiratory or pulmonary diseases arising from dust exposure

and coal mine employment not limited to "true or clinical" pneumoconiosis.

5. In *Wetherill v. Director, OWCP*, 812 F.2d 376, 379–80 (7th Cir.1987), the employer argued that the relevant medical evidence established that pneumoconiosis was not a contributing cause of claimant's disability and asserted, instead, that claimant's disability was caused by a heart condition. We held that under those circumstances *"rebuttal paragraph (b)(3) is the correct provision"* for evaluating the ALJ's ruling...." *Wetherill*, 812 F.2d at 380 (emphasis added). Likewise, in the present case, Peabody argues that Helms was disabled because of a heart condition and not pneumoconiosis. Thus paragraph (b)(3) is again the proper rebuttal standard. We have stated that "[p]aragraph (b)(3) ... enables an employer to rebut the interim presumption by proving that the miner's pneumoconiosis was not a *contributing cause of his total disability.*" *Id.* (emphasis added; citations omitted). It is that standard of rebuttal that we apply.

6. The importance of the absence of *any* evidence contrary to a reasoned medical judgment was stressed in *Knudtson v. Benefits Review Board,* 782 F.2d 97, 100 (7th Cir.1986) (quoting

Peabody to establish Helms' disability did *not arise* out of his coal mine employment. ALJ Decision and Order p. 11 (emphasis added). The present controversy concerns the deposition testimony of Dr. Howard and the medical records of Dr. Getty and Dr. Wilhelmus. These three physicians were the only physicians of record to make direct statements concerning the *cause* (etiology) of Helms' total disability and all three determined that Helms' disability was not related to his coal mine employment.

■ The ALJ disregarded Dr. Howard's testimony for two reasons: (1) his opinion that Helms' chronic obstructive pulmonary disease was not due to coal mine dust exposure was not expressed in the magic terms of a "reasonable medical certainty" under the standards set forth in *Blevins v. Peabody Coal Co.*, 6 Black Lung Rep., 1–750 (1983) (*Blevins III*); and (2) the ALJ further found Dr. Howard's "remarks concerning the claimant's pulmonary disease and his cigarette smoking were quite equivocal."

Dr. Howard reviewed the medical evidence of record and later testified at a deposition concerning the results of his review. The ALJ applied the standard enunciated in *Blevins III* to determine whether Dr. Howard's opinion was expressed as a reasonable medical certainty. ALJ Decision and Order p. 12. In *Blevins III* the Board "stated that testimony must be 'phrased in terms of a *reasonable medical certainty*'...." *Peabody Coal Co. v. Lowis*, 708 F.2d 266, 273 (7th Cir.1983) (emphasis added). We have rejected this standard. *Id.; Underhill v. Peabody Coal Co.*, 687 F.2d 217 (7th Cir.1982). Instead, for purposes of rebutting the interim presumption, we have stated that a physician's opinion must be " 'the documented opinion of a physician exercising *reasoned medical judgment.*' " *Amax Coal Co. v. Director, OWCP*, 801 F.2d 958, 963 (7th Cir.1986) (quoting *Underhill, supra*, at 223) (emphasis added). Applying the reasoned medical judgment standard we reject the ALJ's finding that Dr. Howard's testimony is not acceptable evidence. Although not phrased

*Underhill v. Peabody Coal Co.*, 687 F.2d 217 (7th

in the magic reasonable medical certainty language required by *Blevins III*, Dr. Howard's testimony, when read in its entirety, is clear, direct, unequivocal and well-reasoned.

■ Helms points to Dr. Howard's statement that "I think it [the chronic obstructive pulmonary disease] has most likely been caused by tobacco abuse," as being equivocal. In its proper context, however, that statement is part of a clear and reasoned medical judgment. When asked directly whether the obstructive lung disease was caused by cigarette smoking, he clearly, emphatically, and succinctly responded, "[i]n my opinion it was."

Dr. Howard gave reasoning and explanation for his opinion. He testified that a pulmonary function study conducted in 1983 showed only mild obstructive pulmonary disease and the decrease in the pulmonary function study values from 1980 to 1983 was, again, "most likely ... caused by tobacco abuse." He answered questions concerning the cause of the disability and stated: "The pulmonary function tests, in my opinion, do not support the presence of the physiologic changes that we would usually see with impairing pneumoconiosis." He also noted that shortness of breath can be a symptom of heart disease and that Helms' heart disease was not related to his coal mine employment. Importantly, he opined that Helms would be able to continue in his last coal mine job but for his heart disease with only minor, if any, restrictions due to breathing difficulty. In *Underhill* we held "that a physician's opinion, expressed in clear and uncontradicted terms and based on a physical examination, a ventilatory study, chest X-rays and a review of the miner's employment history satisfies the 'reasoned medical judgment' standard." (*Peabody Coal Co. v. Lowis*, 708 F.2d 266, 274 (1983) (explaining *Underhill*, 687 F.2d 217)). Dr. Howard considered Helms' employment history and the results of physical examinations, pulmonary function studies, arterial blood gas studies, and chest X-rays. Every item of evidence on which he relies is part of the record and, in fact, is also relied upon by

Cir.1982)).

Helms. Thus there is no allowable basis on which the ALJ may disregard Dr. Howard's medical opinion because it is a reasoned medical judgment. As we stated in *Peabody Coal Co. v. Lowis*, 708 F.2d at 275, "the ALJ violated the mandate of 20 C.F.R. § 727.203(b) that 'all relevant evidence shall be considered' in determining whether the presumption of employment caused pneumoconiosis had been rebutted." In that same case we also quoted *Underhill*, 687 F.2d at 222: "[a]n ALJ is not free to substitute his own expertise for that of a qualified physician ..." *Lowis*, 708 F.2d at 275.

Moreover, unlike the questioned testimony in *Amax Coal Co.*, 801 F.2d 958, Dr. Howard's testimony is consistent with every other physician's report because every physician diagnosed a serious heart condition. The other medical opinions, except for those of Dr. Getty and Dr. Wilhelmus, conclude that Helms is disabled and proceed to delineate every disease or health condition suffered by him.[7] The ALJ failed to cite any of the other physicians' reports to support his finding that the interim presumption was not rebutted under paragraph (b)(3). The ALJ has read Dr. Howard's statements out of context and has selectively analyzed the evidence. *Id.* at 276. Thus, we reject the ruling of the ALJ that Dr. Howard's opinion is equivocal and is not a well-reasoned medical judgment.

■ The ALJ also determined that the medical opinions of Dr. Getty and Dr. Wilhelmus were too old to be given weight. Both opinions stated Helms' condition was not related to dust exposure in his coal mine employment. The ALJ almost mechanically reasoned that because these opinions were rendered at least three years before the blood gas studies which evoked the interim presumption they had very little probative value. The ALJ stated:

> "It is not considered that the opinions of Dr. Getty and Dr. Wilhelmus as to the cause of the claimant's [Helms] disability have much, if any, applicability to the disability established by these blood gas studies."

This statement, without further explanation by the ALJ, contravenes common sense as well as our recent decision in *Dotson v. Peabody Coal Co.*, 846 F.2d 1134 (1988). We full well realize that the ALJ

---

7. The physician reports of record may be summarized as follows: *Dr. Ali*, June 8, 1977, through February 23, 1979, treated Helms for lumbosacral pain and acute myocardial infarction, chronic bronchitis, early emphysema and myocardial ischemia; *Dr. Getty*, April 13, 1979, diagnosed valvular disease with questionable enlargement, normal sinus rhythm and aortic stenosis, no pulmonary disease present and stated Helms' impairment was entirely related to his cardiac disease; *Dr. Marty*, May 1979, noted claimant short of breath, suffered from pulmonary edema, aortic valve surgery performed during his hospitalization; he added that Helms had been evaluated for black lung but is silent as to the results of that evaluation; *Dr. Combs*, September 26, 1979, noted chronic interstitial fibronodular densities in both lung fields shown in X-ray, made no specific diagnosis concerning the cause of Helms' breathing difficulty; *Dr. Wilhelmus*, October 14, 1980, diagnosed arteriosclerotic heart disease with coronary artery disease and valvular disease, along with mild chronic obstructive ventilatory defect due to 39 years of tobacco abuse, normal blood gas study, no evidence of pneumoconiosis; *Dr. Milsaps*, July 1980 through October 1983, lungs were clear (July 1980, April 1981, August 1981, October 1983), noted that mild dyspnea on exertion possibly due more to chronic lung disease than to cardiac disease; *Dr. Tauter*, November 11, 1983, reviewed pulmonary function studies performed in 1979 and 1980 and opined Helms' pulmonary function was within normal limits (tests were questioned for validity); *Dr. Renn*, November 25, 1983, reviewed pulmonary function studies performed in 1979, 1980, and 1983, and concluded that Helms' ventilatory function was normal (tests were questioned as to validity); *Dr. Asuncion*, December 12, 1983, through October 23, 1984, final diagnosis of arteriosclerotic heart disease, cardiomegaly, prosthetic aortic valve, first degree, AV block, left ventricular hypertrophy with strain on EKG, possible rheumatic arthritis, history of osteoarthritis, history of hypertension, history of moderate obstructive airway disease, pulmonary function showed moderate obstructive airway disease (December 1983); left hip arthritis, arteriosclerotic heart disease, hypertension and chronic obstructive lung disease (July 1984); pulmonary function test showed moderate obstructive airway disease, "With the present lung problem that he has and his advanced degenerative arthritis of the left hip as well as his cardiac condition, I believe that at this time, he is totally disabled and unable to do gainful employment." (October 1984); *Dr. Marty*, May 15, 1984, indicated Helms had cardiovascular surgery, heart condition, regarding lungs noted "right st. leg. left Rais."

did not have the benefit of reviewing *Dotson* at the time he decided the case. Even so, we held in *Dotson* that all relevant evidence *including medical examinations that preceded the interim presumption triggering test* must be considered and weighed. We simply cannot ascertain from the opinion of the ALJ whether he did or did not consider the medical evidence of Dr. Getty and Dr. Wilhelmus.

> "Unless the [ALJ] has sufficiently explained the weight he has given to obviously probative exhibits to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."

*Zeigler Coal Co. v. Sieberg*, 839 F.2d 1280, 1283 (7th Cir.1988) (concerning the triggering of the interim presumption) (quoting *Arnold v. Secretary of HEW*, 567 F.2d 258, 259 (4th Cir.1977)). Thus, the ALJ also erred in his cursory dismissal of the medical evidence from Dr. Getty and Dr. Wilhelmus.

It is the duty of the ALJ to weigh all the evidence and to explain his decision in light of the evidence. The ALJ is not free to substitute his own experience for that of a qualified physician.[8] In this case the ALJ failed to properly weigh the reasoned medical judgment of Dr. Howard and to explain why, other than mere passage of time, he discounted the medical evidence of Dr. Getty and Dr. Wilhelmus.

### III

■ The ALJ erred in not considering "all relevant medical evidence" in determining that Peabody failed to establish that total disability arose in whole or in part out of coal mine employment. 20 C.F.R. § 727.203(b). Additionally, because the ALJ used the improper standard for medical opinions, we cannot hold that his conclusion was in accordance with law or the evidence. Thus, we reverse the ALJ's determination and remand the matter with instructions to reconsider all the medical evidence.

REVERSED AND REMANDED.

8. *See, e.g., Peabody Coal v. Lowis*, 708 F.2d 266, 275 (1983).

WILL, Senior District Judge, concurring.

I agree that, because the ALJ did not in his decision, as he should have, consider the medical opinions of Dr. Getty and Wilhelmus on the ground that they were given three years before Helms' blood gas studies, the case must be remanded for consideration of all the medical evidence. I write separately, however, because the majority opinion so strongly emphasizes the defendant's evidence that it may be misunderstood as a peremptory direction to the ALJ to find for the defendant.

The statute is clear that if Helms' undisputed total disability is "in whole or in part" a result of his coal mine employment or that, as we have said previously in *Wetherill v. Director, OWCP*, 812 F.2d 376, 380 (7th Cir.1987), pneumoconiosis was "a contributing cause" of his disability he is entitled to compensation under the Act.

We do not here decide that it was not. We do decide that the ALJ must make that determination in the light of all the medical evidence.