**FREEMAN UNITED COAL MINING COMPANY, Petitioner,**

v.

**BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR,** Donald L. Jones, and Director, Office of Workers' Compensation Programs, Respondents.

No. 88–2009.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1989.

Decided June 28, 1989.

246

Louis R. Hegeman, Louis D. Bernstein, Chicago, Ill., for petitioner.

Harold B. Culley, Jr., Raleigh, Ill., Donald S. Shire, Sol. Gen., Dept. of Labor, Linda M. Meekins, Benefits Review Bd., Sylvia T. Kaser, Dept. of Labor, Black Lung Div., Paul Frieden, U.S. Dept. of Labor, SOL/BL, Washington, D.C., for respondents.

Before BAUER, Chief Judge, CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Freeman United Coal Mining Company petitions for review of a decision of the Benefits Review Board of the Department of Labor. The Board reversed the decision of an administrative law judge (ALJ) denying respondent Donald L. Jones benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* We reverse the Board's decision and remand to the ALJ for further proceedings consistent with this court's order.

### I.

Donald L. Jones worked for Freeman United Coal Mining Company as a coal miner for approximately forty-five years. Jones was sixty-one years old when he filed for black lung benefits with the United States Department of Labor on October 27, 1978. Jones continued to work for several months after filing his claim, but he eventually retired in 1979. Jones died on November 3, 1981.

Prior to Jones' death the ALJ issued a decision denying Jones benefits under the Act. The Benefits Review Board reversed, finding that the ALJ failed to invoke the interim presumption under 20 C.F.R. § 727.203(a)(1)[1] in the presence of x-ray evidence that showed the existence of pneumoconiosis and the ALJ also improperly allowed a rereading of this x-ray to defeat this threshold showing, in violation of the regulations. The Board remanded the case to the ALJ for reconsideration and for the purpose of allowing the parties to submit additional x-ray evidence if they desired. The ALJ reopened the record to allow additional submissions and granted the parties an extension of time until September 1981 for this purpose. In October 1981, the ALJ issued a supplemental decision in which he determined that the interim presumption was invoked and Freeman had failed to submit any rebuttal evidence. When Freeman advised the ALJ that the ALJ had given the parties until September to submit additional evidence and that Freeman did submit x-ray evidence in August suggesting that Jones did not have pneumoconiosis, the ALJ suspended his October order until such time that he reviewed this additional evidence.

Jones also submitted additional x-ray evidence in November 1981. Thus, the ALJ had three readings of a single x-ray before him: a negative reading for pneumoconiosis by Dr. Rosenstein (a "B" reader[2]); a

1. Section 727.203 of Title 20 of the Code of Federal Regulations states:
(a) Establishing Interim Presumption. A minor who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, ... arising out of that employment, if one of the following medical requirements is met:
(1) A chest roentgenogram (x-ray), biopsy, or autopsy establishes the existence of pneumoconiosis ...;

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease ...;

2. "'B' readers are radiologists who have demonstrated their proficiency in assessing and classifying x-ray evidence of pneumoconiosis by successful completion of an examination conducted by or on behalf of the Department of Health & Human Services." *Consolidation Coal Co. v. Chubb,* 741 F.2d 968, 971 n. 2 (7th Cir.1984).

positive reading for pneumoconiosis by Dr. Brandon (a "B" reader); and, a positive reading for pneumoconiosis by Dr. Minetree (a board-certified radiologist). Two years later, on January 1, 1983 (no reason is given for this delay), the ALJ issued a supplemental order in which he rejected as inadmissible Dr. Rosenstein's reading submitted by Freeman. The ALJ also rejected Dr. Brandon's reading, stating that it was submitted "long after the time provided for the admission of additional evidence." [3] Consequently, the ALJ found that the x-ray reading by Dr. Minetree was sufficient to invoke the interim presumption and, in the absence of rebuttal evidence, Jones was entitled to benefits.

Less than one month later, however, the ALJ reversed his decision and concluded that Dr. Rosenstein's reading was admissible. The ALJ then reasoned that Dr. Rosenstein's reading must be given greater weight than Dr. Minetree's since Dr. Rosenstein was a "B" reader. The ALJ therefore vacated his supplemental order awarding Jones benefits and reinstated his original order denying benefits on the grounds that the x-ray evidence did not invoke the presumption. Jones requested the ALJ to reconsider his decision, specifically the exclusion of Dr. Brandon's reading. The ALJ

denied Jones' request as untimely and offered that even if he considered the merits of Jones' request his decision would be unchanged.

The Board reversed the ALJ's decision, finding, preliminarily, that Jones' request for reconsideration was timely and, further, that the ALJ should have permitted Dr. Brandon's reading into the record. The Board concluded that based upon the readings by Drs. Brandon and Minetree, the interim presumption was invoked. Further, the Board found the evidence insufficient to establish rebuttal. The Board reversed the ALJ's decision and awarded Jones benefits.

■ Freeman appeals, contending that the Board exceeded its proper scope of review. Freeman does not appeal the Board's finding that the motion for reconsideration was timely or that the additional x-ray evidence was improperly excluded. Freeman argues only that the ALJ properly weighed the conflicting x-ray evidence and that his findings are conclusive since they are supported by substantial evidence. Freeman requests that we reverse the Board and reinstate the ALJ's denial of benefits.[4]

The opinion of a "B" reader may be accorded greater weight by a factfinder than the opinion of a reader who is not certified at the "B" level.

3. Jones submitted the x-ray reading within one month of the date that had been formally set as closing date. Apparently, Jones had been assured informally by the ALJ's office that this late submission would be acceptable. Freeman offered no objection to this late submission.

4. In the alternative, Freeman asks that we remand to the ALJ in light of Freeman's only recent discovery that Jones died in 1981. Jones' death certificate stated that he died from acute myocardial infarction. Freeman contends that Jones' death necessitates remand. While a remand of this case is appropriate for the reasons set forth below, Freeman's attempt to secure a remand based on Jones' death during the pendency of his claim is wholly frivolous.

The death certificate provides no information as to whether Jones, a living miner at the time of his application for benefits, was disabled as a result of any respiratory or pulmonary impairment (the critical inquiry in his claim for bene-

fits). Thus, the death certificate is irrelevant to the resolution of Jones' claim and, in any event, would not be probative. See, e.g., Hillibush v. U.S. Dept. of Labor Benefits Rev. Bd., 853 F.2d 197, 204 (3d Cir.1988) (a death certificate in the absence of an autopsy report may not be used to preclude invocation of presumption of totally disabling respiratory or pulmonary impairment). Similarly, Freeman's contention that Jones' death may require the ALJ to investigate Jones' widow's entitlement to benefits is mere smokescreen. Jones' widow, if an eligible survivor, is entitled to payment of Jones' benefits under his claim filed before January 1, 1982 if Jones' claim was approved prior to his death (which it was) or if by subsequent adjudication it is determined that Jones was eligible for benefits at the time of his death because he was totally disabled due to pneumoconiosis. See 20 C.F.R. §§ 725.201(a)(2), 725.212(a). Jones' widow will be entitled to benefits arising out of Jones' claim without filing any additional claim on her own behalf.

We therefore deny Freeman's motion to remand this case to the ALJ for consideration of these issues.

## II.

■ This court's review is limited in scope. This court reviews the judgment of the ALJ to determine whether it is supported by substantial evidence and is in accordance with the law. *Peabody Coal v. Helms,* 859 F.2d 486, 489 (7th Cir.1988); *Smith v. Director, OWCP,* 843 F.2d 1053, 1057 (7th Cir.1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971).

■ The sole issue is whether the ALJ's decision that the x-ray evidence was insufficient to invoke the interim presumption is supported by substantial evidence and in accordance with the law. It is clear that in issuing his decision on January 20, 1983, the ALJ excluded Dr. Brandon's reading and thus did not consider all relevant medical evidence. Freeman asserts that this omission is excusable, however, because in denying Jones' motion for reconsideration the ALJ allegedly considered this reading and suggested that it would not affect his decision. The ALJ's order, although susceptible of such an interpretation, does not state this specifically, and in any event is inadequate since it provides no statement of the ALJ's reasons or basis for crediting one interpretation of the x-ray over two conflicting interpretations.

The ALJ stated simply that "if the merits of the Motion for Reconsideration had been reached, it would have been denied." The ALJ failed to offer any reason why it would have been denied and thus any review of this conclusion is a practical impossibility. Freeman leads the court to understand that the ALJ meant by this statement that if he would have considered all three readings he, nonetheless, would have arrived at the same conclusion. But Freeman offers no suggestion as to how the ALJ could have arrived at that conclusion in the face of conflicting interpretations and the ALJ's decision is certainly devoid of any explanation. The ALJ may have concluded that one negative reading of the x-ray was sufficient to preclude the invocation of the interim presumption under section 727.203(a)(1). This analysis would be clearly erroneous since the Supreme Court in *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 108 S.Ct. 427, 438–39, 98 L.Ed.2d 450 (1987), held that where an ALJ is confronted with conflicting x-rays or conflicting interpretations of the same x-rays the ALJ must weigh this evidence to determine whether it tends to prove or disprove the existence of pneumoconiosis. Assuming that the ALJ followed the dictates of *Mullins* (an assumption about which we can have no sense of its certainty), the ALJ offers no reason why he would credit the reading of Dr. Rosenstein over the readings of Drs. Minetree and Brandon, which both indicated the presence of pneumoconiosis. The ALJ earlier had found Dr. Minetree's reading sufficiently credible in his January 1, 1983 order to invoke the presumption and award benefits. Even if the ALJ accorded the readings by a "B" reader deference, his decision is silent on what factor accounts for his apparent conclusion that the two positive readings for pneumoconiosis—one by a "B" reader and the other by a board-certified radiologist—did not present a significant challenge to the one negative reading by a "B" reader.

It is not the task of this court to speculate on the basis of the ALJ's conclusion. Concomitant with the ALJ's duty to resolve all conflicts in the medical evidence is the responsibility to provide some general articulable basis for rejecting certain key medical evidence that favors or disfavors an award of benefits. *Peabody Coal Co. v. Hale,* 771 F.2d 246, 249 (7th Cir.1985). At a minimum, the ALJ's opinion must comport with the decisional requirements of the Administrative Procedure Act embodied in 5 U.S.C. § 557(C)(3)(A). The ALJ here failed in this basic task and this court is faced with an inadequate record for an informed review.

■ The Board faced with this same record simply viewed the conflicting x-ray readings and found that the two positive readings required the invocation of the presumption. The Board's opinion similarly fails to disclose whether the Board weighed

the conflicting readings and concluded that a preponderance of the evidence established that Jones was entitled to the presumption. Even if the Board did weigh this evidence, this court cannot accept its decision, despite Jones' urgings. The task of weighing conflicting medical evidence is within the sole province of the ALJ. *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir.1988). This task may not be usurped by a reviewing body.

On remand, the ALJ should be guided by the directives of *Mullins* and should articulate the reasons for his conclusion. As factfinder, the ALJ must "weigh the quality and not just the quantity of the evidence...." *Mullins*, 108 S.Ct. at 434. The ALJ is not bound to invoke the presumption merely because of numerical superiority of the positive readings, but if the ALJ discounts two positive readings in favor of one negative reading some rational explanation is required. The ALJ properly may give more credence to readings by "B" readers. *See Consolidation Coal Co. v. Chubb*, 741 F.2d 968, 971–73 (7th Cir. 1984). However, where the credentials of the board-certified radiologists providing contrary readings of the same x-ray are practically identical and the evidence conflicts as closely as here, we remind the ALJ of the remedial purpose of the Act and the stated need to resolve doubts in favor of a disabled miner or his survivor. *See Collins v. Old Ben Coal Co.*, 861 F.2d 481, 490 (7th Cir.1988).

### III.

Accordingly, we grant the petition for review and direct the Board to vacate its decision and order and the decision and order of the ALJ. The Board is ordered to remand the case to the ALJ with instructions that the ALJ is to weigh conflicting x-ray readings pursuant to the dictates of *Mullins* and articulate the basis for his conclusion.