21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 AMAX COAL COMPANY, Petitioner,
v.
Walter Sevier and Director, Office of Worker's Compensation
Programs, United States Department of Labor, Respondent.
 No. 92-3247.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 24, 1994.
Decided March 28, 1994.
Rehearing Denied April 22, 1994.
 
 Before BAUER, EASTERBROOK and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Walter Sevier worked as a tippleman at Amax Coal Company's Minnehaha surface mine for thirty-eight years. On December 2, 1975, Sevier filed a claim with the Department of Labor under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945.
 
 I. INTERIM REGULATIONS
 
 2
 Because Sevier's claim was filed between July 1, 1973 and April 1, 1980, the "interim regulations" promulgated by the Secretary of Labor in 20 C.F.R. Sec. 727 govern this case. Section 727 requires employers to pay benefits to miners who are totally disabled, if the disability was caused, at least in part, by pneumoconiosis, and if it arose out of coal mine employment.
 
 
 3
 Subsection (a) of 20 C.F.R. Sec. 727.203 establishes a presumption of entitlement if a claimant has worked more than ten years in the mines and is able to produce one of several forms of medical evidence showing a disabling respiratory or pulmonary impairment. Subsection (b) of 20 C.F.R. Sec. 727.203 provides that an employer may rebut this presumption of entitlement by showing that (1) the miner is doing his usual or comparable work, (2) the miner is capable of doing his usual or comparable work, (3) the miner's disability did not arise from coal mine employment, or (4) the miner does not suffer from pneumoconiosis.
 
 II. PROCEDURAL POSTURE
 
 4
 This case has been considered six times before reaching this court. In 1981, the Office of Worker's Compensation Programs ("OWCP") initially determined that Sevier was entitled to benefits. Amax contested this initial determination and requested a formal hearing of the claim before an Administrative Law Judge (ALJ).
 
 
 5
 In 1984, the ALJ found that Sevier was not entitled to benefits. The ALJ determined that Sevier had successfully invoked the subsection (a) presumption of entitlement by producing x-ray evidence; however, it also determined that Amax had rebutted this presumption pursuant to subsection (b)(2). In 1988, and on reconsideration en banc in 1989, the Benefits Review Board vacated the ALJ's finding of subsection (b)(2) rebuttal, and remanded the case for further weighing of the evidence under both subsections (b)(2) and (b)(3).
 
 
 6
 On remand, the ALJ found that Amax had not presented enough evidence to establish rebuttal under either subsection (b)(2) or (b)(3), and granted Sevier benefits. The ALJ then denied Amax's motion for reconsideration, and Amax appealed to the Benefits Review Board. The Benefits Review Board in 1992 affirmed the ALJ's findings. Amax now appeals from the order of the Benefits Review Board.
 
 III. ANALYSIS
 
 7
 This appeal presents us only with the issue of whether Amax presented enough evidence to rebut a presumption of entitlement under either 20 C.F.R. Sec. 727.203(b)(2) or (b)(3).[1]
 
 
 8
 Although Amax appeals this case from a decision of the Benefits Review Board, "this court reviews the decision of the ALJ, not of the Board." Old Ben Coal Co. v. Battram, 7 F.3d 1273, 1275 (7th Cir.1993) (citing Dotson v. Peabody Coal Co., 846 F.2d 1134, 1137 (7th Cir.1988)). We review the ALJ's decision to determine whether it is "rational, supported by substantial evidence, and consistent with the governing law." Id. (citing Old Ben Coal Co. v. Luker, 826 F.2d 688, 691 (7th Cir.1987)). The employer bears the burden of production and proof when rebutting a presumption of entitlement under subsection (b). Mullins Coal Co. v. Director, Office of Worker's Compensation Programs, 484 U.S. 135, 144 & n. 12, 108 S.Ct. 427, 432 & n. 12 (1987).
 
 A. Subsection (b)(2) Rebuttal
 
 9
 The relevant evidence in this case consists of the medical opinions of two doctors that examined Sevier, Drs. Duren and Deppe.[2] The two doctors diagnosed Sevier's condition and commented on its cause and severity. The ALJ found, however, that since neither doctor offered any opinion as to whether Sevier was still capable of doing his usual mine work, Amax could not establish (b)(2) rebuttal on the basis of this medical evidence.
 
 
 10
 In Freeman United Coal Mining Co. v. Benefits Review Bd., 912 F.2d 164 (7th Cir.1990), we held that "[i]n order to establish Subsection (b)(2) rebuttal, the employer must establish that the miner is able to do his usual coal mine work or comparable and gainful work." Id. at 171 (citations omitted). We noted that "[m]edical evidence used to support a finding of Subsection (b)(2) rebuttal should therefore consider 'the exertive requirements of the [claimant's] job or the extent to which [the claimant's] symptoms would hinder his performing comparable work. A mere finding of "no impairment" ... cannot be equated with a finding that a claimant can continue to perform coal mining work.' " Id. (citations omitted).
 
 
 11
 In this case, Dr. Duren stated that Sevier was only able to walk one-quarter mile or climb three flights of stairs before significant dyspnea (shortness of breath) would occur. He did not, however, assess the physical requirements of Sevier's mine work, or state to what extent Sevier's dyspnea would hinder his job performance. Dr. Deppe also concluded that "symptomatically, Mr. Sevier is quite limited with dyspnea," but did not evaluate the extent to which Sevier's dyspnea would prevent him from doing his usual or comparable mine work.
 
 
 12
 Because both doctors found that Sevier had some impairment, and neither doctor made any assessment of Sevier's ability to do his usual coal mine work, Amax cannot be said to have produced any medical evidence to support its contention that Sevier could perform his usual work. Thus, the ALJ committed no error in ruling that Amax failed to meet its burden of establishing rebuttal under subsection (b)(2). See Freeman, 912 F.2d at 171-72 (holding that where the record contains no evidence that "actually addresses [a claimant's] ability to work at the time of the hearing," subsection (b)(2) rebuttal is not established as a matter of law).
 
 B. Subsection (b)(3) Rebuttal
 
 13
 The ALJ also found that Amax had not established rebuttal under subsection (b)(3). Citing Weatherill v. Director, Office of Worker's Compensation Programs, 812 F.2d 376 (7th Cir.1987), the ALJ began by noting that an employer may establish rebuttal under subsection (b)(3) by proving that coal worker's pneumoconiosis was not a contributing cause of a claimant's total disability. The ALJ then stated that an employer may do this by offering evidence that would " 'rule out' any causal relationship between total disability and coal mine employment." Amax argues that instead of holding it to a "rule out by a preponderance of the evidence" standard, the ALJ erroneously held it to a "rule out all doubt" standard of proof.
 
 
 14
 In Amax Coal Co. v. Beasley, 957 F.2d 324 (7th Cir.1992), we held that to establish rebuttal under subsection (b)(3), the employer must "rule out CWP as a contributing cause by a preponderance of the evidence." Id. at 327 (citations omitted). In this case, we find no indication that the ALJ held Amax to any standard of proof inconsistent with the preponderance standard in Beasley.[3] The record contains substantial evidence to support the ALJ's finding that Amax had not ruled out coal miner's pneumoconiosis as a contributing cause by a preponderance of the evidence.
 
 
 15
 First, Dr. Duren concluded that Sevier had a chronic, non-productive cough, etiology undetermined. Dr. Duren also checked off the "yes" box in response to a question asking him whether the claimant's diagnosed condition is related to coal dust exposure during mine employment. Duren explained, "[t]he presence of a non-productive cough in a person with long-term mine employment and minimal tobacco usage is explained until proven otherwise on his industrial exposure." Duren never represented in any way that coal miner's pneumoconiosis could be ruled out as a contributing cause to Sevier's disability. In fact, Duren's statements may be interpreted to support the conclusion that Sevier's disability was coal mine related.[4]
 
 
 16
 Next, Dr. Deppe asserted in his report that "[w]hile Mr. Sevier may have some mild degree of obstructive pulmonary disease I think his dyspnea is probably related to a great extent to deconditioning rather than to a serious disabling pulmonary disease." When asked during a deposition whether Sevier had coal worker's pneumoconiosis, Dr. Deppe responded that he thought there was "the possibility that [Sevier] had simple coal worker's pneumoconiosis based on the mild interstitial changes on his chest x-ray."
 
 
 17
 The ALJ was not convinced by Dr. Deppe's conclusion that Sevier's condition was largely related to deconditioning. "The ALJ ha[s] sole power to make credibility determinations and resolve inconsistencies in the evidence." Freeman, 912 F.2d at 168 (citing Meyer v. Ziegler Coal Co., 894 F.2d 902, 908 (7th Cir.1990)). He stated that he considered Dr. Deppe's conclusions tentative,[5] and that Deppe had failed to explain why, given "forty years of coal mine exposure, a minimal smoking history, and possible radiographic evidence of mild pneumoconiosis, he attributes little of Claimant's dyspnea to his coal mine employment."
 
 
 18
 Moreover, from Deppe's statement that Sevier's "dyspnea was probably related to a great extent to deconditioning," (emphasis added), the ALJ inferred that Sevier's dyspnea might thus be "related to a lesser extent to his coal mine employment and that his ... employment was therefore a contributing factor."
 
 
 19
 It was permissible for the ALJ to make such credibility determinations, draw inferences, and determine that Dr. Deppe's statement did not tend to rule out a causal relationship between Sevier's disability and coal miner's pneumoconiosis.
 
 
 20
 From this dearth of evidence, the ALJ properly concluded that Amax had not met its burden of ruling out pneumoconiosis as a contributing factor of Sevier's disability. Therefore, we hold that the ALJ committed no error in finding that Amax had not established rebuttal under subsection (b)(3).
 
 III. CONCLUSION
 
 21
 For the foregoing reasons, the decision of the Benefits Review Board is
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Amax does not challenge the ALJ's invocation of the subsection (a) presumption in this appeal
 
 
 [2]
 To reach his decision, the ALJ relied on a third medical opinion, that of a Dr. Lenyo. However, while Dr. Lenyo diagnosed obstructive pulmonary disease, he failed to comment on its cause or severity. Thus, his opinion adds little to the evidence already contained in the opinions of Drs. Duren and Deppe
 
 
 [3]
 Amax points out that once in his written decision, the ALJ characterized Dr. Deppe's report as failing to "clearly rule out" pneumoconiosis as a contributing cause. We point out that the ALJ articulated the "rule out" standard correctly many other times in his order, and that he applied the correct standard of proof notwithstanding his perhaps casual use of the word "clearly."
 
 
 [4]
 Amax disputes the significance of Dr. Duren's conclusion that Sevier's cough is coal dust related. It maintains that a cough and dyspnea are two different symptoms, and that the cough is not a part of Sevier's disability. Regardless of the truth of this assertion, Dr. Duren's report still does not contain any information that would tend to rule out pneumoconiosis as a cause of Sevier's pulmonary disability
 
 
 [5]
 Amax argues that the ALJ improperly concentrated on Dr. Deppe's use of "the single word 'probably' " to find that Deppe's opinion was a tentative one. We note that Dr. Deppe also stated in his report that "it is somewhat difficult to quantitate the exact degree of impairment," and in his deposition that he "fe[lt] somewhat constrained about commenting absolutely on his degree of impairment because [he was] uncertain about [Sevier's] pulmonary function test abnormalities." These statements reinforce the ALJ's conclusion that Deppe was equivocal in his findings